IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| DONNA LYNCH,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al*.,<br><br>　　　　　Defendants. | CIVIL NO. 16-00213 DKW-KSC<br><br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING LEAVE TO AMEND** |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
AND GRANTING LEAVE TO AMEND**

**INTRODUCTION**

Plaintiff Donna Lynch, proceeding pro se, brings numerous claims against the lender and loan servicer involved in the nonjudicial foreclosure sale of her property. Lynch seeks damages, rescission of a 2007 mortgage and to set aside the foreclosure sale, based upon the fraudulent conduct of unspecified agents acting on behalf of Defendants.   Because several of Lynch's claims are not alleged with the particularity required by Federal Rule of Civil Procedure 9(b) and/or otherwise fail to state a claim for relief, Defendants' Motion to Dismiss is granted.   Lynch is granted limited leave to file an amended complaint no later than December 16, 2016, with instructions below.

## BACKGROUND

Lynch brings claims against Defendants Federal National Mortgage Association ("Fannie Mae"), Countrywide Home Loans, Inc. ("Countrywide"), and Bank of America, N.A. ("BANA"), arising from the nonjudicial foreclosure sale of her real property located at 66 Haku Hale Place, Lahaina, Hawaii 96761 ("Property"), which took place on June 17, 2010 under a power of sale from a 2007 Mortgage.   Complaint ¶¶ 7-15, 31.[1]   Fannie Mae gained title to the Property through the foreclosure sale, and thereafter initiated a Complaint for Ejectment in the Circuit Court of the Second Circuit in the State of Hawaii to obtain possession of the Property.   Defendants' Ex. B (Quitclaim Deed) and Ex. C (Complaint for Ejectment).   Lynch filed the instant Complaint in state court while the ejectment action was pending.[2]   Defendants removed the case to this Court on May 3, 2016.

The Complaint alleges that during the course of refinancing her mortgage with Countrywide, Lynch "was suffering from a medical condition that affected her

---

[1] The Court GRANTS Defendants' Request For Judicial Notice.   Dkt. No. 8.   The Court may consider documents whose contents are incorporated by reference in the Complaint, including the 2007 Mortgage.   *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1160 (9th Cir. 2012).   The Court may also consider matters that are the proper subject of judicial notice pursuant to Federal Rule of Evidence 201, including publicly available and recorded documents.   *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Barber v. Ohana Military Communities, LLC*, 2014 WL 3529766, *4 (D. Haw. July 15, 2014).

[2] On August 19, 2015, the state court granted Fannie Mae's motion for summary judgment and writ of possession and entered judgment in its favor.   Lynch filed a Notice of Appeal in the ejectment action on March 16, 2016, CAAP-16-0000196.   *See* Defendants' Ex. E.

ability to think clearly," and notified Countrywide of this fact.   Complaint ¶¶ 12-14.

Because of her medical condition, she was unable to leave her home.   Therefore,

"Countrywide sent a representative to her house to force her to sign paperwork for

this second refinancing.   Relying on representations made by [Countrywide] or its

agents, and for fear of the dire consequences Defendant threatened her with, [Lynch]

reluctantly signed the new loan papers."   Complaint ¶ 15.   According to Lynch,

"when she became unable to make payments on this second refinanced loan, [she]

became aware that she had been duped into signing a loan with considerably worse

terms than the first refinance loan."   Complaint ¶ 16.

She attempted to modify the terms of her mortgage, at times communicating

with Countrywide and BANA (as servicer of the loan), "and receiving conflicting

information from each."   Complaint ¶ 22.   At an unspecified date, Lynch alleges

that "agents of [BANA] told Plaintiff to stop making mortgage payments, falsely

explaining that she had to be in default in order for her request for a loan

modification to be considered.   Relying on the representations of agents of

[BANA], Plaintiff stopped making payments on her mortgage."   Complaint

¶¶ 27-28.   She contends that the non-judicial foreclosure sale of the Property

occurred while loan modification negotiations were ongoing and was wrongfully

conducted because the "posting of the intention to foreclose was never put in one of

the Plaintiff's local papers on Maui.   It was apparently posted in the paper on

Honolulu. . . .    And therefore, it is not considered a 'local newspaper.'"    Complaint

¶ 32.

Lynch alleges the following causes of action: (1) quiet title and wrongful

foreclosure (Count I); (2) fraud and rescission (Count II); (3) violation of the Real

Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) ("RESPA"), and 12 C.F.R.

§ 226.36(c)(1)(iii) ("Regulation Z") (Count III); (4) violation of the Equal Credit

Opportunity Act, 15 U.S.C. § 1961("ECOA"), and 12 C.F.R. § 202.9(c)(2)

("Regulation B") (Count IV); (5) unfair and deceptive acts and practices ("UDAP")

under Haw. Rev. Stat. ("HRS") Chapter 480 (Count V); (6) breach of the implied

covenant of good faith and fair dealing (Count VI); (7) breach of agreement to

negotiate loan modification contract in good faith (Count VII); (8) negligent and/or

intentional misrepresentation (Count VIII); and (9) nullification and avoidance of

note and mortgage due to mental incapacity (Count IX).    Defendants move to

dismiss the Complaint with prejudice for failure to state a claim upon which relief

can be granted.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for

failure to state a claim upon which relief can be granted.    Pursuant to *Ashcroft v.*

*Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"    555

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

## DISCUSSION

Because Lynch is proceeding pro se, the Court liberally construes her filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)). The Court recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248

(9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013).

As discussed more fully below, even liberally construed, the allegations in the Complaint are deficient for several reasons.   First, the allegations of fraudulent conduct fall short of the particularity required by Federal Rule of Civil Procedure 9(b), including the time, place, party, and content of the fraudulent representations. Second, the Complaint fails to provide sufficient factual content to permit the Court to draw the reasonable inference that any Defendant is liable for the misconduct alleged.   Defendants' Motion is therefore granted, but with limited leave to amend consistent with the instructions below.

## I.   <u>Count I: Quiet Title</u>

Count I seeks "a judgment quieting title in [Lynch's] favor, as the subject Note and Mortgage, and consequently the nonjudicial foreclosure sale conducted on the subject property and subsequent transfer of title to Defendant [Fannie Mae], are void and unenforceable[.]"   Complaint ¶ 34.   The Court construes the claim as seeking relief pursuant to HRS § 669-1(a), which provides that a quiet title "[a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."   Lynch, however, has not alleged even the most basic facts regarding the interests of various parties to make out a cognizable "quiet title" claim.

Further, a plaintiff bringing a statutory quiet title claim against a mortgagee or purported servicer for the mortgagee is required to allege that she is able to tender the amount of indebtedness. *See Nat'l Mortg. Ass'n v. Kamakau*, 2012 WL 622169, at *9 (D. Haw. Feb. 23, 2012) ("A basic requirement of an action to quiet title is an allegation that plaintiffs are the rightful owners of the property, *i.e.*, that they have satisfied their obligations under the [note and mortgage].") (internal quotation marks and citation omitted); *Benoist v. U.S. Bank Nat'l Ass'n*, 2012 WL 3202180, at *10 (D. Haw. Aug. 3, 2012) ("[T]ender is required, regardless of whether the claim is based on common law or statute."); *Caraang v. PNC Mortg.*, 795 F. Supp. 2d 1098, 1126 (D. Haw. 2011) ("In order for mortgagors to quiet title against the mortgagee, the mortgagors must establish that they are the rightful owners of the property and they have paid, or are able to pay, the amount of their indebtedness."). Cases from this district and elsewhere rely on this rule requiring a plaintiff "to establish his superior title by showing the strength of his title as opposed to merely attacking the title of the defendant." *Amina v. Bank of N.Y. Mellon*, 2012 WL 3283513, at *3 (D. Haw. Aug. 9, 2012). Lynch does not allege that she has paid the outstanding loan balance or that she is able to do so.

For these reasons, Lynch fails to state a claim for quiet title, and Count I is dismissed. Because amendment may be possible, however, she is granted leave to attempt to cure the deficiencies in this claim.

7

## II.   **Count II: Fraud**

Lynch alleges in Count II that the "Note and Mortgage are void and unenforceable as procured by fraud, coercion, and under duress.   [Countrywide] made multiple misrepresentations to [Lynch] . . . [she] was fraudulently induced and coerced by these statements to sign the second refinance loan documents without having time to review them or have them reviewed."   Complaint ¶ 35.

### A.   **Whether Fraud Claims Are Time-Barred**

From what the Court can discern, Lynch's fraud allegations stem from the refinancing of her 2007 Mortgage.   *See* Defendants' Ex. A.   Specifically, she claims that Countrywide made misrepresentations that caused her to sign refinance documents "to her detriment," and that "she was physically intimidated by loan officers showing up at her house," and as a result, "the nonjudicial foreclosure sale must be set aside."   Complaint ¶¶ 35-36.   The only mortgage between Lynch and Countrywide before the Court is the 2007 Mortgage, which was also the basis for the nonjudicial foreclosure and eventual state court ejectment action.   In opposition to the Motion, Lynch does not contest that the 2007 Mortgage is the operative document.   Accordingly, the Court construes Count II as relating to fraudulent conduct arising from the refinancing of the 2007 Mortgage.

Defendants move to dismiss the fraud claims as time-barred.   Although the Complaint does not allege the dates of these encounters with Defendants' allegedly

intimidating representatives, or the specific circumstances that resulted in the

signing of the documents, these allegations appear to relate exclusively to the

origination of the Countrywide Mortgage recorded in the State of Hawaii Bureau of

Conveyances ("BOC") on May 15, 2007.   *See* Defendants' Ex. A.   Lynch's fraud

claims are subject to a limitations period of six years under HRS § 657-1(4).   *Mroz*

*v. Hoaloha Na Eha, Inc.*, 360 F. Supp. 2d 1122, 1135 (D. Haw. 2005) (citing

*Eastman v. McGowan*, 86 Hawaiʻi 21, 946 P.2d 1317, 1323 (1997)).   As to when

the statute of limitations period for a fraud-based claim begins to run:

> Under Hawaiʻi law, constructive notice "arise[s] as a legal
> inference, where circumstances are such that a reasonably
> prudent person should make inquiries, [and, therefore,] the law
> charges a person with notice of facts which inquiry would have
> disclosed."   *SGM Partnership v. Nelson*, 5 Haw. App. 526, 529,
> 705 P.2d 49, 52 (1985) (citation omitted; brackets in original).
> Although Hawaiʻi courts have not addressed whether the
> recording of a deed serves as constructive notice for purposes of
> a fraud claim, courts in the state have recognized that the
> recording of a document gives notice to the general public of the
> conveyance.   *See Markham v. Markham*, 80 Hawaiʻi, 274, 281,
> 909 P.2d 602, 609 (App. 1996) (noting that the "central purpose
> of recording a conveyance of real property is to give notice to the
> general public of the conveyance and to preserve the recorded
> instrument as evidence"). . . . [A] publicly record[ed] document
> . . . provides constructive notice where the document itself
> constitutes evidence of the fraud.

*Fields v. Nationstar Mortg. LLC*, 2015 WL 5162469, at *4 (D. Haw. Aug. 31, 2015)

(citation omitted).

Based on Lynch's allegations, the Mortgage itself constitutes evidence of the alleged fraud.   *See* Complaint ¶¶ 14-19, 35-37.   The Mortgage was recorded with the BOC as Document Number 2007-086966.   Defendants' Ex. A.   Thus, Lynch is charged with constructive knowledge of the contents of the Mortgage on May 15, 2007.   In fact, Lynch had actual notice of the contents of the Mortgage when she signed the document before a notary on May 3, 2007.   Lynch filed her Complaint in state court on April 4, 2016.   In other words, whether the statute of limitations began to run on May 3, 2007 or May 15, 2007, Lynch failed to file her Complaint within the six-year limitations period.

The Court finds, however, for purposes of the instant Motion, that dismissal on statute of limitations grounds would not be appropriate in light of Lynch's allegations that she was under duress and "mentally incapable of making a rational decision at that time."   Complaint ¶ 36.   Although the Court is not required to assume the truth of these legal conclusions for the purpose of tolling the statute of limitations, *see Iqbal*, 555 U.S. at 678, liberally construed, there may be grounds to establish equitable or statutory tolling.[3]   A claim may be dismissed under Rule 12 as

---

[3]*See* HRS § 657-13 ("If any person entitled to bring any action specified in this part (excepting actions against the sheriff, chief of police, or other officers) is, at the time the cause of action accrued, either: (1) Within the age of eighteen years; or, (2) Insane; or, (3) Imprisoned on a criminal charge. . .; such person shall be at liberty to bring such actions within the respective times limited in this part, after the disability is removed or at any time while the disability exists.").  Although Lynch raises issues of her mental capacity to contract, rather than legal insanity for purposes of tolling under HRS § 657-13, such allegations, read with the required liberality, could

"barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'"   *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir. 2006)).   Such motion should be granted "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."   *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000) (citation omitted); *see also Trost v. Embernate*, 2011 WL 6101543, at *2 (D. Haw. Dec. 7, 2011).   Liberally construing her allegations, the Court cannot determine at this preliminary stage of the litigation whether the otherwise time-barred fraud claims relating to the 2007 Mortgage are tolled.   Accordingly, the Motion is denied on this basis.

### B.   Failure To Allege Fraud With Particularity

In any event, Count II fails to satisfy the heightened pleading requirements applicable to such claims.

> Fraud and fraudulent misrepresentation share the same elements.
> *Compare Fisher v. Grove Farm Co.*, 123 Haw. 82, 103, 230 P.3d
> 382, 403 (Haw. Ct. App. 2009) (stating the elements of a fraud

---

also support an argument for application of the statutory tolling provision.   *See, e.g., Imamoto v. Soc. Sec. Admin.*, 2008 WL 2622815, at *6 (D. Haw. July 3, 2008) ("Although HRS § 657-13 does not define the meaning of 'insane,' the Hawaii Supreme Court discussed its contours: '[J]urisdictions examining the meaning of insanity in the context of tolling the statute of limitations have liberally defined the term as: (1) the inability to understand one's legal rights or manage one's affairs; (2) the inability to understand the nature or effect of one's acts; or (3) the inability to carry out one's business and prosecute the claim.'") (quoting *Buck v. Miles*, 89 Haw. 244, 252, 971 P.2d 717, 725 (1999)).

> claim) *with Ass'n of Apartment Owners*, 115 Haw. at 263, 167
> P.3d at 256 (stating the elements of a fraudulent
> misrepresentation claim).   Like fraudulent misrepresentation,
> the elements of fraud are "1) false representations made by the
> defendant, 2) with knowledge of their falsity (or without
> knowledge of their truth or falsity), 3) in contemplation of
> plaintiff's reliance upon them, and 4) plaintiff's detrimental
> reliance."   *Fisher*, 123 Haw. at 103, 230 P.3d at 403.

*Prim Liab. Co. v. Pace-O-Matic, Inc.*, 2012 WL 263116, at *8 (D. Haw. Jan. 30,

2012).

Rule 9(b) requires that, when fraud or mistake is alleged, "a party must state

with particularity the circumstances constituting fraud or mistake."   Fed.R.Civ.P.

9(b).   An allegation of fraud is sufficient if it "identifies the circumstances

constituting fraud so that the defendant can prepare an adequate answer from the

allegations."   *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (internal

citations and quotations omitted).   "Averments of fraud must be accompanied by

the who, what, when, where, and how of the misconduct charged."   *Kearns v. Ford*

*Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp.*

*USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).   A plaintiff must also explain why the

alleged conduct or statements are fraudulent.   *In re GlenFed, Inc. Sec. Litig.*, 42

F.3d 1541, 1548 n.7 (9th Cir. 1994) (en banc), *superseded by statute on other*

*grounds by* 15 U.S.C. § 78u-4.

Lynch does not sufficiently allege the circumstances that constitute fraudulent

conduct by Countrywide or its unnamed "agents" in Count II.   The Complaint does

not identify such facts as the times, dates, places, or other details of the alleged fraudulent activity. *Neubronner*, 6 F.3d at 672.

Consequently, Count II fails to satisfy the particularity requirement of Rule 9(b) and is dismissed. Because amendment may be possible, however, Lynch is granted leave to attempt to cure the deficiencies in this claim.

## III. <u>Count III: RESPA</u>

Lynch alleges in Count III that BANA "acting as servicer . . . [by] not responding within the statutory time limit and, in fact, not responding at all . . . violated 12 U.S.C. § 2605(e) and [Regulation Z]." Complaint ¶ 38. She contends that she "sent multiple written requests to [BANA] disputing the amount of debt she allegedly owed and requesting documentation. No written response addressing these issues was ever given to [Lynch]. Failing to provide an accurate statement of the total outstanding balance of the debt without a reasonable time further violates [Regulation Z]." Complaint ¶ 38.

### A. <u>Whether RESPA Claims Are Time-Barred</u>

Lynch does not allege the specific dates that she requested documents from BANA, and the Court cannot determine as a matter of law that her RESPA claims are time-barred. The Complaint alleges that at "some point not now known to [Lynch], [BANA] began acting as the servicer of her loan. [Lynch] does not recall receiving any notice of such a change in violation of 12 U.S.C. § 2605 of [RESPA]."

Complaint ¶ 21.   She further alleges that, before the initiation of the nonjudicial foreclosure, she had a series of communications with BANA regarding the terms of the Mortgage and her attempted loan modification.   *See* Complaint ¶¶ 21-29. Although it appears that certain requests were made prior to the nonjudicial foreclosure sale, the dates of the other relevant communications are absent. According to Lynch,

> [a]fter months of stressful delay, [she] was sent the HAMP paperwork by [BANA].   Plaintiff was sent this paperwork three days prior to the initiation of a nonjudicial foreclosure process by [BANA].
>
> Subsequently, a nonjudicial foreclosure sale was wrongfully conducted on the subject property before Ms. Lynch had time to properly assess her options and while the loan modification negotiations were still ongoing.

Complaint ¶¶ 30-31.   The foreclosure sale took place on June 17, 2010.   *See* Defendants' Ex. B (Quitclaim Deed).

The statute of limitations for a RESPA claim is either one or three years from the date of the violation, depending on the type of violation.   Specifically, 12 U.S.C. § 2614 provides:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation[.]

To the extent Lynch alleges a violation of Section 2605, her claims are subject to the three-year limitations period.   It is not clear from the allegations in the Complaint, however, when Lynch actually requested documents from BANA, or when any corresponding limitations period for a civil action based on BANA's purported failure to comply with its statutory obligations began to run. Accordingly, the Motion is denied on this basis.

### B.      Failure To State A RESPA Claim

In any event, Count III fails to state a RESPA claim.   To the extent Lynch attempts to assert a claim for violation of 12 U.S.C. § 2605(e) based on BANA's failure to respond to a Qualified Written Request ("QWR"), her allegations are deficient.   RESPA provides that "[i]f any servicer of a federally related mortgage loan receives a [QWR] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days[.]"   12 U.S.C. § 2605(e)(1)(A).   After receiving the QWR, within sixty days, the loan servicer must either correct the borrower's account or, after conducting an investigation, provide the borrower with a written explanation of: (1) why the servicer believes the account is correct; or (2) why the requested information is unavailable.   *See* 12 U.S.C. § 2605(e)(2).

Lynch asserts in only the most vague terms the existence of a QWR—Lynch does not attach a copy of the request, does not allege facts to establish when and how she communicated with BANA, does not describe the content of these communications, including whether they concerned the servicing of her loan, as defined by RESPA, and generally does not describe the communications in sufficient detail to determine whether they triggered a duty to respond. Accordingly, she fails to state a cognizable RESPA claim.   *See Rey v. Countrywide Home Loans, Inc*., 2012 WL 253137, at *6 (D. Haw. Jan. 26, 2012) (citing *Lettenmaier v. Fed. Home Loan Mortg. Corp*., 2011 WL 3476648, at *12 (D. Or. Aug. 8, 2011) (dismissing RESPA claim where "plaintiffs fail to attach a copy of their correspondence to the Complaint or to allege facts showing that the communication concerned servicing of the loan as defined by the statute"); *Manzano v. Metlife Bank N.A.,* 2011 WL 2080249, at *7 (E.D. Cal. May 25, 2011) (Plaintiff "cannot simply allege in conclusory fashion that the written correspondence constituted QWRs.").

The RESPA claim here also fails because Lynch has not alleged any actual damages.   Pursuant to 12 U.S.C. § 2605(f)(1), Lynch has a burden to plead and demonstrate that she has suffered damages.   Because damages are a necessary element of a RESPA claim, failure to plead damages is fatal.   *See, e.g., Rey*, 2012 WL 253137, at *5 (citing *Esoimeme v. Wells Fargo Bank*, 2011 WL 3875881, at *14

(E.D. Cal. Sept. 1, 2011) (dismissing claim where the plaintiff failed to "allege any pecuniary loss from defendant's alleged failure to respond to the QWR"); *Shepherd v. Am. Home Mortg. Servs.*, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages.") (quoting *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006)).   Lynch fails to allege that she suffered any actual damages *as a result* of the alleged RESPA violations.   *See Shepherd*, 2009 WL 4505925, at *3. Indeed, although the requirement that a borrower plead damages is interpreted "liberally," *id*., "the [borrower] must at least allege what or how the [borrower] suffered the pecuniary loss."   *Ash v. OneWest Bank, FSB*, 2010 WL 375744, at *6 (E.D. Cal. Jan. 26, 2010).

In sum, Lynch fails to allege a RESPA claim against any party and Defendants' Motion is granted as to Count III.   Because amendment may be possible, however, Lynch is granted leave to attempt to cure the deficiencies in this claim.

## IV.   Count IV: ECOA

Count IV alleges that BANA violated ECOA and Regulation B by failing to notify her within 60 days of "the action taken on said loan modification application." Complaint ¶ 39.   According to Lynch, she "never received any written response,

and every time she called [BANA] to inquire about the status of her application she was rudely dismissed or told they had misplaced her paperwork."   Complaint ¶ 39.

Defendants first seek dismissal on statute of limitations grounds.   The ECOA currently provides that actions brought under that statute must be commenced within "5 years after the date of occurrence of the violation."   15 U.S.C. § 1691e(f).[4]   As discussed previously, Lynch alleges she had a series of communications with both BANA and Countrywide concerning loan modification negotiations prior to the nonjudicial foreclosure sale.   *See* Complaint ¶¶ 21-31.   It is not clear from the allegations in the Complaint, however, when Lynch actually sent her loan modification application to BANA, or when any corresponding limitations period for a civil action based on BANA's purported failure to comply with its statutory obligations began to run.   That is, the Complaint does not state that the loan modification application was submitted prior to the June 17, 2010 foreclosure sale. Accordingly, the Court cannot determine whether the ECOA claims are time-barred based upon the ambiguous allegations in the Complaint.

---

[4]At the time of the 2007 Mortgage loan origination, however, the ECOA contained a two-year limitations period.   15 U.S.C. § 1691e(f)(2010), *amended by* Dodd–Frank Wall Street Reform and Consumer Protection Act (Dodd–Frank Act), Pub.L. No. 111–203, 124 Stat. 1376 (2010). Courts have held that Congress did not clearly manifest an intent for the longer limitations period enacted in July 2010 to apply retroactively, and, therefore, the two-year limitations period applies to claims that accrued before July 2010.   *See Colquitt v. Manufacturers & Traders Trust Co.*, 144 F. Supp. 3d 1219, 1229 (D. Or. 2015).   Because it is not clear from the face of the Complaint when Lynch allegedly sent her loan modification application to BANA, or when the alleged violation of ECOA occurred, it is not clear whether the two-year or five-year limitations period applies under the circumstances presented.

In any event, because the allegations are vague, conclusory and fail to set forth the required elements, Count IV is dismissed for failure to state a claim with leave to amend.   In general, a plaintiff alleges an ECOA violation by asserting that "(1) she is a member of a protected class; (2) she applied for credit with defendants; (3) she qualified for credit; and (4) she was denied credit despite being qualified." *Hafiz v. Greenpoint Mortg. Funding, Inc*., 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009); *Blair v. Bank of Am., N.A*., 2012 WL 860411, at *12 (D. Or. Mar. 13, 2012).

First, Lynch does not allege that she is a member of a protected class.   Under Section 1691(a)(1), it is unlawful to discriminate against any applicant on the basis of race, color, religion, national origin, sex or marital status, or age.   The Complaint is silent in this regard.

Second, with respect to that portion of her ECOA claim related to BANA's non-responses or denials of her modification application during the unspecified time period, Lynch fails to allege she was qualified to receive a modification or to allege any facts from which the Court could infer she was qualified to receive any modification.   Accordingly, Lynch fails to state a claim for violation of the ECOA as to any portion of her ECOA claim that is timely.

The Court grants Defendants' Motion and dismisses Count IV.   Because amendment may be possible, dismissal is with leave to amend.

## V.   **Count V: UDAP**

Count V alleging unfair and deceptive acts and practices is insufficiently

pled.[5]   Lynch seeks an order that her Note and Mortgage are void and unenforceable

under Chapter 480, on the grounds that:

> the origination of the subject loan being based not on Plaintiff's
> ability to pay, but upon the brokers' and lenders' and their
> agents', successors', and assignees' ability to recover substantial
> fees and commissions from the transaction, and their ability to
> recover upon the foreclosure value of the subject property,
> entitling Plaintiff to a declaration that the underlying mortgage
> contract is null and void pursuant to Section 480-12[.]

Complaint ¶ 40.   She also alleges that BANA caused her "default and delayed her

loan modification processing to increase her default and late fees making any default

cure virtually impossible and ensuring she have no foreclosure alternative."

Complaint ¶ 41.

Count V fails state a Chapter 480 claim.   Pursuant to Section 480-13, a

successful UDAP claim must establish three elements: (1) a violation of HRS

chapter 480; (2) which causes an injury to the plaintiff's business or property; and

(3) proof of the amount of damages.   *Davis v. Four Seasons Hotel Ltd.*, 122 Hawai'i

423, 435, 228 P.3d 303, 315 (2010).   Section 480-2(a) states: "Unfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or

---

[5]Although Defendants move to dismiss the claim as time-barred, for the same reasons discussed previously with respect to her Count II fraud claim, the Court declines to dismiss on statute of limitations grounds at this early stage due to the possibility of equitable or statutory tolling.

commerce are unlawful."   The Hawaii Supreme Court "has described a deceptive

act or practice as having the capacity or tendency to mislead or deceive."   *Courbat*

*v. Dahana Ranch, Inc*., 111 Hawai'i 254, 261, 141 P.3d 427, 434 (2006) (citation

and quotation marks omitted).   More specifically, under Hawaii law, "a deceptive

act or practice is (1) a representation, omission, or practice that (2) is likely to

mislead consumers acting reasonably under circumstances where (3) the

representation, omission, or practice is material."   *Id*. at 262, 141 P.3d at 435

(quotation and alteration signals omitted).   "A representation, omission, or practice

is considered 'material' if it involves 'information that is important to consumers

and, hence, likely to affect their choice of, or conduct regarding, a product.'"   *Id*.

(citing *Novartis Corp. v. FTC*, 223 F.3d 783, 786 (D.C. Cir. 2000)).

A UDAP claim alleging fraudulent business practices must be pled with

particularity pursuant to Rule 9(b).   *Smallwood v. Ncsoft Corp*., 730 F. Supp. 2d

1213, 1232 (D. Haw. 2010).   Lynch fails to allege the time, place and specific

content of the unfair and deceptive practice as well as the identities of the parties to

the action.   *See Neubronner*, 6 F.3d at 672.

Moreover, a UDAP claim cannot be based on a HAMP guidelines violation

because no private right of action exists to enforce them.   *See Rey v. Countrywide*

*Home Loans, Inc*., 2012 WL 253137, at *9 (D. Haw. Jan. 26, 2012).   Finally,

Lynch's UDAP claim cannot be based on any alleged failure to offer a loan

modification because she has not established a right to such modification.   And to the extent her UDAP claims are based on BANA's refusal to modify the loan or negotiate in good faith, she does not present a sufficient factual basis for the alleged promise to modify the loan, or subsequent "bait and switch."   *See Dias v. Fed. Nat. Mortg. Ass'n*, 990 F. Supp. 2d 1042, 1055 (D. Haw. 2013).

Consequently, Count V fails to satisfy the particularity requirement of Rule 9(b) and fails to state a claim under Rule 12(b)(6).   Because amendment may be possible, dismissal is with leave to amend.

## VI.   Count VI: Breach Of Implied Covenant Of Good Faith And Fair Dealing

Count VI alleges that:

> [BANA], by requiring Ms. Lynch to default prior to entering into loan modification negotiations, acted with dishonest purpose and conscious wrongdoing.   Through its participation in HAMP, [BANA] receives financial payments solely for the purpose of helping homeowners such as Ms. Lynch, by permanently modifying their loans.   HAMP guidelines only require a homeowner to be facing 'imminent default' and, contrary to the misrepresentations made by [BANA] and its agents, does not require a homeowner to be in default or even behind in payments.   By making these misrepresentations, [BANA] acted dishonestly for the purposes of inducing Ms. Lynch to give up the benefit of her loan contracts, thus breaching the covenant of good faith and fair dealing that is implied in every contract within the state of Hawaii[.]

Complaint ¶ 43.

Although commercial contracts for the "sale of goods" contain an obligation of good faith in their performance and enforcement, this obligation does not create

an independent cause of action.   *See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.,* 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006).   Breach of the implied covenant of good faith is not its own claim but merely part of a breach of contract analysis.   *See id.* at 1037.   Hawaii courts have regularly held that this theory provides no basis for a plaintiff to sue for damages or to set aside a note or a mortgage in the context of a mortgage loan contract.   *See Au v. Republic State Mortgage Co*., 2012 WL 3113147, at *10 (D. Haw. July 31, 2012).

At best, this claim asserts the tort of "bad faith."   *See Best Place v. Penn Am. Ins. Co*., 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract). Although bad faith is an accepted tort where the plaintiff is a party to an insurance contract, the tort has not been recognized in Hawaii based upon a mortgage loan contract.   *See Jou v. Nat'l Interstate Ins. Co. of Haw*., 114 Hawai'i 122, 129, 157 P.3d 561, 568 (Ct. App. 2007) (explaining that "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in [*Best Place v. Penn Am. Ins. Co.*] requires a contractual relationship between an insurer and an insured") (citations omitted).   In fact, Hawaii federal district courts have uniformly held that a tort cause of action for bad faith does not exist in the context of a mortgage loan contract. *Ramelb v. Newport Lending Corp*., 2014 WL 229186, *3 (D. Haw. Jan. 14, 2014) (citing *Jou v. Nat'l Interstate Ins. Co. of Haw*., 157 P.3d 561, 568 (Haw. App.

2007)); *Gray v. OneWest Bank, Fed. Sav. Bank*, 2014 WL 3899548, *9 (D. Haw. Aug. 11, 2014); *Tedder v. Deutsche Bank Nat. Trust Co.*, 863 F. Supp. 2d 1020, 1039 (D. Haw. 2012).

Accordingly, the Motion is granted as to Count VI.   Because amendment would be futile, dismissal of Count VI is without leave to amend.

## VII.   Count VII: Breach Of Agreement To Negotiate In Good Faith

Lynch alleges in Count VII that BANA "entered into a valid agreement to negotiate a loan modification contract in good faith."   Complaint ¶ 44.   She contends that she "relied on [BANA's] promise and direction and entered into default to her obvious detriment.   But for this promise of good faith negotiation, Ms. Lynch would not have entered into default. . . . These negotiation tactics were in bad faith and breached said promise of good faith negotiations."   Complaint ¶ 45.

Count VII is facially deficient for several reasons.   First, for the same reasons discussed above with respect to the breach of the covenant of good faith and fair dealing, no independent cause of action exists for failure to negotiate in good faith.   Second, even assuming such a claim existed, a party cannot breach an agreement before a contract is formed.   *See Contreras v. Master Fin., Inc.*, 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) ("[A]n implied covenant relates only to the performance under an extant contract, and not to any pre-contract conduct.") (citing *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d

Cir. 1998)); *see also Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1237

(D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged

misrepresentations made before the [mortgage loan] contract was entered into, [the

bad faith claim] fails as a matter of law."); *Young v. Allstate Ins. Co*., 119 Hawaiʻi

403, 427, 198 P.3d 666, 690 (2008) (indicating the covenant of good faith does not

extend to activities occurring before consummation of an insurance contract).

Third, to the extent the allegations are based on BANA's failure to offer a loan

modification or to negotiate a HAMP modification in good faith, Lynch fails to state

a claim.   This district court and numerous other district courts within the Ninth

Circuit have made clear that there is no express or implied private right of action to

sue lenders or service providers for HAMP violations.   *See, e.g., Northern Trust,*

*NA v. Wolfe*, 2012 WL 1983339, at *20 (D. Haw. May 31, 2013) ("Although Wolfe

contends that Northern Trust had a duty under HAMP not to proceed with

foreclosure while evaluating him for loan modification, there is no express or

implied private right of action for a violation of HAMP."); *Dias v. Fed. Nat. Mortg.*

*Ass'n*, 990 F. Supp. 2d 1042, 1054 (D. Haw. 2013) ("Qualified borrowers under

HAMP would not be reasonable in relying on the Agreement as manifesting an

intention to confer a right on him because the agreement does not require [a loan

servicer to] modify eligible loans.   Thus, Plaintiffs lack standing to challenge

HAMP compliance.") (citations and quotations omitted).

Accordingly, Lynch's claim for breach of agreement to negotiate in good faith is dismissed.   Because amendment would be futile, dismissal of Count VII is without leave to amend.

## VIII.   Count VIII: Negligent and/or Fraudulent Misrepresentation

Count VIII alleges that BANA "fraudulently induced Ms. Lynch into defaulting upon her loan with materially misleading statements that she would have to be in default to receive any benefit under the federal HAMP program.   These statements could have been made for no other purpose than to induce default, as [BANA] and its agents surely knew that this is not the law."   Complaint ¶ 47. Lynch asserts that she "was duped by all of the statements made that the bank wants to help her and would try earnestly to work out a modification.   This constitutes Intentional, or, at least Negligent Misrepresentation by [BANA] and its agents." Complaint ¶ 47.

As discussed more fully below, Lynch does not adequately plead claims for intentional or negligent misrepresentation.   Although Count VIII purports to encompass both fraudulent misrepresentations and negligent misrepresentations, it should, but does not, provide any indication as to which statements are alleged to have been made fraudulently, and which negligently.   *See Illinois Nat. Ins. Co. v. Nordic PCL Const., Inc.,* 870 F. Supp. 2d 1015, 1037 (D. Haw. 2012) (Plaintiff

"may not evade Rule 9's particularity requirements by saying that misrepresentations were made either fraudulently or negligently.").

### A.   <u>Intentional/Fraudulent Misrepresentation</u>

Under Hawaii law, fraudulent misrepresentation requires that: "(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them." *Shoppe v. Gucci Am., Inc.,* 94 Hawai'i 368, 386, 14 P.3d 1049, 1067 (2000) (internal quotation marks and citations omitted).   Fraud claims, "in addition to pleading with particularity, also must plead plausible allegations.   That is, the pleadings must state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'"   *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566 (2007)).

To the extent Lynch's claims are premised on a promised loan modification, the Complaint fails to offer sufficient details as to the time, place, or content of the allegedly fraudulent statements.   Further, the fraud claims with regard to a potential loan modification appear to be based on future events or inferences of mere broken promises.

> [U]nder Hawai'i law, the false representation forming the basis
> of a fraud claim "must relate to a past or existing material fact

and not the occurrence of a future event." *Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.*, 107 Hawai'i 423, 433, 114 P.3d 929, 939 (Ct. App. 2005) (citations and block quote format omitted) (emphasis in original).   Further, even if the allegations satisfy the other elements of a fraud claim, "[f]raud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events[.]"   *Id.* (citations and block quote format omitted) (emphasis in original).   The exception to this general rule is that "[a] promise relating to future action or conduct will be actionable, however, if the promise was made without the present intent to fulfill the promise."   *Id.* (citations and block quote format omitted).

*Doran v. Wells Fargo Bank*, 2011 WL 2160643, at *12 (D.Haw. May 31, 2011).   In the present case, Lynch's allegation that Defendants somehow promised her that she would qualify for loan modification, or even that BANA promised her that it would consider her application if she defaulted, cannot support a plausible fraud claim unless Lynch can also allege that, when Defendants made those promises, they never intended to fulfill them.   Absent such a state of mind, the alleged representations amount only to broken promises and not fraud.

Moreover, to the extent Lynch's claims are based on BANA's alleged misrepresentations regarding loan modification, those claims are not alleged with the particularity required by Rule 9(b).   *See, e.g., Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1042 (9th Cir. 2010) (stating that plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations

do not suffice") (citation omitted).   These allegations fall short of the heightened pleading standards for fraud claims.

Because the Court finds that Lynch may be able to cure the deficiencies set forth above, the Court DISMISSES this portion of Count VIII with leave to amend.

### B.   Negligent Misrepresentation

To prevail on a negligent misrepresentation claim under Hawaii law, a plaintiff must demonstrate that "(1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation."   *Soriano v. Wells Fargo Bank, N.A.*, 2013 WL 310377, at *7 (D. Haw. Jan. 25, 2013) (quoting *Blair v. Ing*, 95 Hawai'i 247, 269, 21 P.3d 452, 474 (2001)).   To the extent Count VIII alleges negligent misrepresentation, those allegations are not governed by Rule 9(b). *Illinois Nat. Ins. Co.*, 870 F. Supp. 2d at 1038.

Although Count VIII is alternatively styled as a claim for negligent and/or intentional misrepresentation, upon reviewing the specifics of her claims, Lynch's allegations are grounded in fraudulent conduct – intentionally misleading statements – rather than negligent misrepresentations.   She alleges that BANA "fraudulently induced" her into defaulting by means of "materially misleading statements," which "could have been made for no other purpose than to induce default."   Complaint

¶ 47.   The gravamen of this conduct is fraud and deception – not negligence or failure to exercise reasonable care.   *See Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1232 (D. Haw. 2010) ("Plaintiff has not alleged a negligent misrepresentation claim because Plaintiff's allegations in this regard all sound in fraud. . . . Accordingly, because these allegations are grounded in fraud and not pled with specificity, any purported claim for negligent misrepresentation is dismissed[.]"); *Prim Liab. Co. v. Pace-O-Matic, Inc.*, 2012 WL 263116, at *7 (D. Haw. Jan. 30, 2012) (Dismissing claim where "[a]lthough the title of Count IV refers to 'Negligent Misrepresentation,' the text of Count IV itself states neither the elements of a negligent misrepresentation claim nor facts relevant to reasonable care, competent communication, or reliance.   To the contrary, Count IV alleges that Pace acted with scienter and intent.   It is the absence of scienter and intent that separates negligent misrepresentation from intentional misrepresentation."). Likewise here, Lynch fails to state a claim for negligent misrepresentation.

Because the Court finds that Lynch may be able to cure the deficiencies set forth above, the Court DISMISSES Count VIII with leave to amend.

## IX.   Count IX: Mental Incapacity

Count IX seeks to set aside Lynch's loan based on "mental incapacity." Lynch alleges that she "clearly lacked the capacity the time the second refinance was signed to enter into a contract.   Plaintiff was suffering from an illness which

affected her ability to think coherently and notified Defendant Countrywide of said infliction."   Complaint ¶ 48.   She contends that the "second refinanced Note and accompanying Mortgage should be held to be null and void, the original refinance loan should be reinstated with any closing costs and overpayments made by Plaintiff to be reimbursed, and the nonjudicial foreclosure sale set aside as being based upon void contracts."   Complaint ¶ 48.

Although Lynch cites no legal authority for this claim, the Court liberally construes the claim as seeking rescission of the 2007 Mortgage.   *See Bischoff v. Cook*, 118 Hawai'i 154, 160, 185 P.3d 902, 908 (Ct. App. 2008) ("Plainly stated, the remedy of rescission is an avoidance of a transaction, the extinguishment of an agreement such that in contemplation of law it never existed, even for the purpose of being broken.").   For many of the reasons discussed previously, Count IX fails to state a claim as currently alleged.

### A.   Count IX Fails To State A Claim Under Chapter 480

A rescission claim under Chapter 480 may be possible where the consumer lacked capacity to enter into the relevant contract.   *See, e.g.*, *Skaggs v. HSBC Bank USA, N.A.*, 2010 WL 5390127, at *4-6 (D. Haw. Dec. 22, 2010) (analyzing whether a defense of incapacity can be asserted against a holder in due course seeking to foreclose, and concluding that a mortgage note that is void under § 480-12 may be subject to such defenses against a subsequent assignee); *Young v. Bank of N.Y.*

*Mellon*, 848 F. Supp. 2d 1182, 1193 (D. Haw. 2012) (Allowing Chapter 480 rescission claim to proceed where plaintiff presented evidence of significant impairments "*e.g.*, her advanced age, inability to see or hear, and her dementia), [which] rendered her 'incapable of reading, writing, and understanding re-finance mortgage documents,'. . . . Her doctor also indicates she was 'legally blind and almost deaf, and was suffering from dementia.'").

If a Chapter 480 violation is established, however, rescission under Section 480-12 does not necessarily or automatically follow.   Rather, a plaintiff seeking affirmatively to void a mortgage transaction under Section 480-12 must be able to "place the parties in as close a position as they held prior to the transaction." *Skaggs*, 2011 WL 3861373, at *11; *see also Beazie v. Amerifund Fin., Inc.*, 2011 WL 2457725, at *12 (D. Haw. June 16, 2011) ("Indeed, avoidance of a contract and restitution and/or rescission, *i.e.,* treating the agreements as void *ab initio* and placing the parties in the positions they held prior to the transaction, go hand-in-hand to carry out this result and prevent a windfall to one party."); *Lee v. HSBC Bank USA*, 121 Hawai'i 287, 292, 218 P.3d 775, 780 (2009) (holding that where an agreement created at a foreclosure sale is void and unenforceable for failure to comply with HRS § 667-5, then "[t]he high bidder at such a sale is entitled only to return of his or her downpayment plus accrued interest").

Lynch does not allege she has the ability to tender loan proceeds back to the lender, as necessary to obtain rescission.   *See, e.g., Young v. Bank of N.Y. Mellon*, 848 F. Supp. 2d 1182, 1193-94 (D. Haw. 2012) ("[A] plaintiff seeking affirmatively to void a mortgage transaction under § 480-12 must be able to 'place the parties in as close a position as they held prior to the transaction.'") (quoting *Skaggs*, 2011 WL 3861373, at *11); *Au v. Republic State Mortg. Co.*, 2013 WL 1339738, at *13 (D. Haw. Mar. 29, 2013).

### B.   <u>Count IX Fails To State A Claim Based On Fraudulent Conduct</u>

To the extent Lynch seeks to void her loan based upon fraudulent inducement by Countrywide, this remedy does not appear to be available against any bona fide purchaser.   *See Beazie v. Amerifund Fin., Inc.*, 2011 WL 2457725, at *10 (D. Haw. June 16, 2011) ("To establish that the mortgage transaction is void for fraud—and can be cancelled against a bona fide purchaser such as DBNTC — Plaintiff must establish fraud in the factum, as opposed to fraud in the inducement.   *See Aames Funding Corp. v. Mores*, 107 Haw. 95, 103-104, 110 P.3d 1042, 1050–51 (Haw. 2005) (explaining the three types of fraud in the mortgage context, including fraud in the factum, fraud in the inducement, and constructive fraud).") (footnote omitted). Accordingly, even if Countrywide induced Lynch to enter into a mortgage transaction that she otherwise would not have entered into, Lynch cannot seek

rescission and/or cancellation of this transaction against any bona fide purchaser who was not a party to the fraudulent transaction.

Because amendment may be possible, however, she is granted leave to attempt to cure the deficiencies in this claim.

## X.   <u>Limited Leave To Amend Is Granted</u>

The Court GRANTS limited leave to file an amended complaint, consistent with the terms of this Order, by **December 16, 2016**.   Lynch is granted leave to attempt to amend the following claims: Count I (quiet title); Count II (fraud); Count III (RESPA); Count IV (ECOA); Count V (UDAP); Count VIII (negligent and/or fraudulent misrepresentation); and Count IX (rescission).   To be clear, this Order limits Plaintiff to the filing of an amended complaint that attempts to cure the specific deficiencies identified in this Order.

If Lynch chooses to file an amended complaint, she must write short, plain statements, which clearly allege the following: (1) the constitutional or statutory right she believes was violated; (2) the name of the defendant who violated that right or law; (3) exactly what that defendant did or failed to do; (4) how the action or inaction of that defendant is connected to the violation of law; and (5) what specific injury Plaintiff suffered because of that defendant's conduct.   *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).   Plaintiff must repeat this process for each person or entity named as a defendant.   If Plaintiff fails to affirmatively link the conduct of

each named defendant with the specific injury suffered, the allegation against that defendant will be dismissed for failure to state a claim.   As noted in this Order, allegations of fraud must be stated with the particularity required by Rule 9(b).

An amended complaint generally supersedes a prior complaint, and must be complete in itself without reference to the prior superseded pleading.   *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc).   Claims dismissed without prejudice that are not re-alleged in an amended complaint may be deemed voluntarily dismissed.   *See Lacey*, 693 F.3d at 928 (stating that claims dismissed with prejudice need not be re-alleged in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not re-pled). Lynch may not re-allege any claims dismissed with prejudice.

The amended complaint must designate that it is the "First Amended Complaint" and may not incorporate any part of the original Complaint.   Rather, any specific allegations must be retyped or rewritten in their entirety.   Failure to file an amended complaint by December 16, 2016 will result in automatic dismissal of this action without prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.

Lynch is granted limited leave to file an amended complaint, consistent with the terms of this Order.   Lynch is cautioned that failure to file an amended complaint by **December 16, 2016** will result in the dismissal of this action without prejudice.

IT IS SO ORDERED.

DATED: November 15, 2016 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Lynch v. Fed. Nat'l Mortgage Ass'n et al.*; CV 16-00213 DKW-KSC; **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING LEAVE TO AMEND**