IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| DONNA LYNCH,<br><br>        Plaintiff,<br><br>    vs.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al*.,<br><br>        Defendants. | CIVIL NO. 16-00213 DKW-KSC<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND; AND (2) DENYING PLAINTIFF'S MOTION TO EXTEND BRIEFING DEADLINES** |

## INTRODUCTION

Plaintiff Donna Lynch, proceeding pro se, brings unspecified claims against the lender, loan servicer, and assignee of a 2007 mortgage on her real property in Maui that was sold at a 2010 non-judicial foreclosure sale.   Although her First Amended Complaint lacks specific claims, Lynch appears to seek rescission of the mortgage and invalidation of the foreclosure sale, due to fraud in the origination of the loan and during the foreclosure proceeding.   The First Amended Complaint, however, suffers from several of the same deficiencies as Lynch's original Complaint, as described in the Court's November 15, 2016 Order Granting Defendants' Motion To Dismiss With Leave To Amend.   *See* Dkt. No. 40 (11/15/16 Order).   Because Lynch's indeterminate claims did not cure the deficiencies

previously identified by the Court, are not alleged with the particularity required by Federal Rule of Civil Procedure 9(b), are time-barred, or otherwise fail to state a claim for relief, Defendants' Motion to Dismiss is granted.   For a second time, Lynch is granted leave to file an amended complaint— no later than October 6, 2017—limited by and consistent with the instructions below.   The Court denies Lynch's requests for a further extension of time in which to file additional briefing.

## **BACKGROUND**

Lynch brings claims against Defendants Federal National Mortgage Association ("Fannie Mae"), Countrywide Home Loans, Inc. ("Countrywide"), and Bank of America, N.A. ("BANA"), in an effort to set aside the non-judicial foreclosure sale of her real property located at 66 Haku Hale Place, Lahaina, Hawaii 96761 ("Property"), which took place on June 17, 2010 under a power of sale from a 2007 Mortgage.   First Amended Complaint ("FAC") ¶¶ 29–31, Dkt. No. 46; Defs.' Ex. A (2007 Mortgage), Dkt. No. 50-1.[1]   Fannie Mae gained title to the Property

---

[1]The Court GRANTS Defendants' Request For Judicial Notice.   Dkt. No. 50.   The Court may consider documents whose contents are incorporated by reference in the Complaint, including the 2007 Mortgage (*i.e.*, Defs.' Ex. A).   *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1160 (9th Cir. 2012).   The Court may also consider matters that are the proper subject of judicial notice pursuant to Federal Rule of Evidence 201, including adjudicative facts capable of accurate and ready determination.   *See* Fed.R.Evid. 201(b).   The Court may take judicial notice of facts that are a matter of public record from publicly available and recorded documents, including state court filings and documents filed with the State of Hawaii Bureau of Conveyances (*i.e.*, Defs.' Exs. A–E).   *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *Barber v. Ohana Military Communities, LLC*, 2014 WL 3529766, *4 (D. Haw. July 15, 2014).

through the foreclosure sale, and thereafter initiated a Complaint for Ejectment in the Circuit Court of the Second Circuit in the State of Hawaii to obtain possession of the Property.   Defs.' Ex. B (Quitclaim Deed) and Ex. C (Complaint for Ejectment); Dkt. Nos. 50-2 and 50-3.

According to Lynch, the 2010 foreclosure sale was "illegal and fraudulent," due in part to a "forged Assignment made in 2009 from MERS to BAC and a notice of Foreclosure naming solely BAC Home Loans and [which] never mentioned Fannie Mae who was the original investor from the inception of the loan."   FAC ¶¶ 29, 35.   Lynch alleges that—

> 47. The Lynch loan was sold by [Countrywide] to [Fannie Mae] who had its own securitization pools not necessarily listed in the Securities and Exchange Commission ("SEC").
>
> 48. Fannie was the investor and real party in interest from the loan application process [in] 2007 forward.
>
> 49. However, Fannie was concealed during the foreclosure process and did not appear in the Assignment of Mortgage, Intent to Foreclose Notices, the Non-Judicial Foreclosure or the Foreclosure Affidavit that were all filed and remain in the Hawaii Bureau of Conveyances.
>
> ****
>
> 51. It appears that Fannie and BAC executed a scheme that concealed the real party in interest owner/investor from Lynch.

FAC ¶¶ 47–49, 51.

The FAC further alleges that the 2007 Mortgage was improperly procured by employees of Countrywide and that she is a victim of a nationwide mortgage fraud conspiracy known as the "Hustle." *See* FAC ¶¶ 43–179. According to Lynch, Countrywide employees contacted her in 2007 to inform her that she needed to refinance her 2005 mortgage, also with Countrywide, because "an internal [Countrywide] audit found that the 2005 loan was 'invalid and/or illegal.'" FAC ¶ 68. Lynch alleges that the 2007 loan application was "crafted in Ventura, California by Steven Gillespie at Countrywide," who was "Lynch's sole contact via phone throughout the refinance process," and that he "convinced Lynch that her 2005 loan was no longer valid and without a refinance she would no longer own her home or have homeowner's insurance." FAC ¶¶ 76–78. According to Lynch, "[i]n addition to escalating the appraisal market value again this time to $850,000, the first mortgage amount terms and interest rates, [Countrywide] added a $77,000 2nd mortgage in an 80/20 deal that Lynch was not expecting." FAC ¶ 74. Moreover, "[o]n the day of signing, since Lynch had a medical disability and could not drive, a representative from CHL came to her house." FAC ¶ 82.

Lynch alleges that the following improper lending practices by Countrywide were part of a larger scheme to defraud—

> 83. Gillespie informed Lynch that the property market value had allegedly increased to $850,000 which became a central part of Gillespie's sale pitch.

4

84. Countrywide would later become well known for requiring inflated appraisals to meet the parameters of the loan amount.

85. Treating the inflated equity like stocks, Lynch was encouraged to increase her mortgaged amount, roll in some debt and take some cash out.

86. It was the standard [Countrywide] sales operating procedure.

87. No documentation needed, as the previous loan information would suffice.

88. This was a high speed, fast and easy "Hustle" loan.

****

91. The Lynch first mortgage loan dated May 1, 2007 was sold to Fannie upon origination.

92. It appears the 2007 2nd line of credit mortgage may not have been fully disclosed to Fannie; specifically, loans sold to Fannie must comply with its Single Family Selling Guide and purchase contracts.

93. [Countrywide] was known for failing to follow the Fannie Guidelines. . . .

94. By 2008 and the onset of the financial crisis it became painfully obvious that these Adjustable Rate Mortgage loans were intended to create defaults and not designed for long term 30 year loans.

FAC ¶¶ 83–88, 91–94.

Lynch contends that the loan servicer, BAC, and Fannie Mae "committed intrinsic fraud, such as filing materially false [nonjudicial foreclosure] documents . . . in the Hawaii Bureau of Conveyances [and] in Court . . . wherein they knowingly concealed the real party in interest, the actual mortgagee, owner and investor [Fannie Mae], throughout the entire nonjudicial foreclosure process." FAC ¶ 173. Lynch asserts that "the documents [recorded] in the Bureau of Conveyances [("BOC")] since 2007 have been fraudulent and have irreparably harmed [her]." FAC ¶ 31.

Lynch filed her original Complaint in state court while the ejectment action was pending.[2] Defendants removed the case to this Court on May 3, 2016. The Court dismissed Lynch's original Complaint based on similar allegations of fraud by unspecified agents of Countrywide and BANA and granted her leave to amend. 11/15/16 Order. The FAC, filed on February 2, 2017, eliminated several of the specific causes of action alleged in the original Complaint, but otherwise repeats many of the prior averments, while adding new theories based on Countrywide's broader scheme to defraud. Lynch seeks "an Order to set aside and vacate the June 17, 2010 non-judicial foreclosure and following judgments in this Court, not only to

_____

[2]On August 19, 2015, the state court granted Fannie Mae's motion for summary judgment and writ of possession and entered judgment in its favor. *See* Defs.' Ex. D (Judgment) Lynch filed a Notice of Appeal in the ejectment action on March 16, 2016, CAAP-16-0000196. *See* Defs.' Ex. E (Notice of Appeal); Dkt. No. 50-5.

prevent further irreparable harm to her, but as a matter of law to correct any possible fraud, misrepresentation and circumvention used to obtain the judgments and orders." FAC ¶ 271.

Defendants move to dismiss the FAC with prejudice for failure to state a claim upon which relief can be granted. Dkt. No. 49. Following several extensions of time from the Court, Lynch filed her opposition to Defendants' Motion on July 25, 2017 (Dkt. Nos. 60 and 61), and Defendants timely filed a reply by the August 14, 2017 deadline (Dkt. No. 63). After the close of briefing, on August 21 and 22, 2017, Lynch filed additional requests to extend the briefing deadlines to allow her to supplement her opposition and for leave to file an amended complaint. *See* Dkt. Nos. 64 and 65. The Court addresses each of the motions below.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted. Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual

allegations that only permit the court to infer "the mere possibility of misconduct"

do not constitute a short and plain statement of the claim showing that the pleader is

entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

Because Lynch is proceeding pro se, the Court liberally construes her filings.

*See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132,

1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to

liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v.*

*MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)). The Court recognizes that

"[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se

litigant is entitled to notice of the complaint's deficiencies and an opportunity to

amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248

(9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013).

A court may, however, deny leave to amend where further amendment would be

futile. *See, e.g.*, *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir.

2008) (reiterating that a district court may deny leave to amend for, among other

reasons "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment").

## DISCUSSION

### I.     Defendants' Motion To Dismiss Is Granted

Even liberally construed, the allegations in the First Amended Complaint are deficient for several reasons.    First, the allegations of fraudulent conduct once again fall short of the particularity required by Federal Rule of Civil Procedure 9(b). Second, the Complaint fails to provide sufficient factual content to permit the Court to draw the reasonable inference that any Defendant is liable for the misconduct alleged.    Moreover, many of the claims relating to the 2007 loan origination are time-barred.    Defendants' Motion is therefore granted, but with limited leave to amend consistent with the instructions below.

As a preliminary matter, the FAC does not comply with Rule 8, which mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that "each allegation must be simple, concise, and direct."    Fed. R. Civ. P. 8(d)(1).[3]    Because specific claims are not identified in a coherent manner,

_____

[3]The FAC consists of 330 numbered paragraphs, several of which appear to be duplicative, and runs fifty-two pages long—exclusive of the 183 pages of exhibits—but does not include enumerated counts or causes of action, unlike the original Complaint, which included the following causes of action: (1) quiet title and wrongful foreclosure (Count I); (2) fraud and rescission (Count II); (3) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) ("RESPA"), and 12 C.F.R. § 226.36(c)(1)(iii) ("Regulation Z") (Count III);

the Court is left to guess as to the causes of action that Lynch intended to assert in the FAC.   The sole evident remedy sought is an order "set[ting] aside and vacat[ing] the June 17, 2010 non-judicial foreclosure and following judgments in this Court." FAC ¶ 271.   To the extent the Court is able to discern specific claims or causes of action, they are organized below in order to provide guidance on the filing of an amended complaint.

### A.     Claims Sounding In Fraud

The Court first addresses the allegations of fraud throughout the FAC. Lynch primarily alleges that the 2007 Mortgage was fraudulently procured by Countrywide and that its recordation on May 15, 2007 was likewise fraudulent.   *See* FAC ¶¶ 31, 173–84, 226, 290.

### 1.     Certain Fraud Claims Are Time-Barred

Lynch's claims sounding in fraud are subject to a limitations period of six years under HRS § 657-1(4).   *Mroz v. Hoaloha Na Eha, Inc*., 360 F. Supp. 2d 1122, 1135 (D. Haw. 2005) (citing *Eastman v. McGowan*, 86 Hawai'i 21, 946 P.2d 1317,

---

(4) violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1961 ("ECOA"), and 12 C.F.R. § 202.9(c)(2) ("Regulation B") (Count IV); (5) unfair and deceptive acts and practices ("UDAP") under Haw. Rev. Stat. ("HRS") Chapter 480 (Count V); (6) breach of the implied covenant of good faith and fair dealing (Count VI); (7) breach of agreement to negotiate loan modification contract in good faith (Count VII); (8) negligent and/or intentional misrepresentation (Count VIII); and (9) nullification and avoidance of note and mortgage due to mental incapacity (Count IX).   The FAC no longer asserts these claims for relief, nor does it specifically identify any claims for violation of federal and/or state law.

1323 (1997)).   As to when the statute of limitations period for a fraud-based claim

begins to run:

> Under Hawaiʻi law, constructive notice "arise[s] as a legal inference, where circumstances are such that a reasonably prudent person should make inquiries, [and, therefore,] the law charges a person with notice of facts which inquiry would have disclosed."  *SGM Partnership v. Nelson*, 5 Haw. App. 526, 529, 705 P.2d 49, 52 (1985) (citation omitted; brackets in original). Although Hawaiʻi courts have not addressed whether the recording of a deed serves as constructive notice for purposes of a fraud claim, courts in the state have recognized that the recording of a document gives notice to the general public of the conveyance.  *See Markham v. Markham*, 80 Hawaiʻi, 274, 281, 909 P.2d 602, 609 (App. 1996) (noting that the "central purpose of recording a conveyance of real property is to give notice to the general public of the conveyance and to preserve the recorded instrument as evidence"). . . . [A] publicly record[ed] document . . . provides constructive notice where the document itself constitutes evidence of the fraud.

*Fields v. Nationstar Mortg. LLC*, 2015 WL 5162469, at *4 (D. Haw. Aug. 31, 2015)

(citation omitted).

Defendants move to dismiss as time-barred any fraud-based claims relating to

the origin of the 2007 Mortgage.   Although the FAC does not allege the dates of

Lynch's encounters with Defendants' agents, including Mr. Gillespie at

Countrywide, the loan documents were executed by Lynch on May 3, 2007 and the

Mortgage was recorded May 15, 2007 at the BOC as Document Number

2007-086966.   Defs.' Ex. A at 1, 15.   The 2007 Mortgage itself contains the loan

terms that Lynch claims were misrepresented and fraudulently recorded.   Thus,

Lynch is charged with constructive knowledge of the contents of the Mortgage by May 15, 2007.   In fact, Lynch had actual notice of the contents of the Mortgage when she signed the document before a notary on May 3, 2007.   *See* Defs.' Ex. A at 15.   Lynch filed her original Complaint in this matter in state court on April 4, 2016. In other words, whether the statute of limitations began to run on May 3, 2007 or May 15, 2007, Lynch failed to file her Complaint within the six-year limitations period.

A claim may be dismissed under Rule 12 as "barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'"   *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir. 2006)).   Such motion should be granted "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."   *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000) (citation omitted); *see also Trost v. Embernate*, 2011 WL 6101543, at *2 (D. Haw. Dec. 7, 2011).   Although Lynch alleges that she suffered a stroke in 2005 or 2006, she does not allege that she was under duress, incapable of decision making, or that she was unable to understand her legal rights or manage her affairs when she refinanced the loan in May of 2007.   *See* FAC ¶ 301 ("I had a slight stroke in 2005/06, several extensive surgeries to remove tumor and reconstruction of sinus,

jaw joint, bone grafts and temporal flap, much swelling in head, confusion, disorientation."); *id*. ¶ 82 ("On the day of signing, since Lynch had a medical disability and could not drive, a representative from [Countrywide] came to her house."). Lynch does not allege that at the time she refinanced the loan in 2007 or when she executed the Mortgage documents recorded with the BOC, that she was unable to understand the nature or effect of her acts. That is, even liberally construed, there are no allegations in the FAC to establish grounds for equitable or statutory tolling with respect to the 2007 Mortgage refinancing.[4] The fraud claims dating to the 2007 loan origination and recordation are therefore time-barred.

### 2. The FAC Fails To State A Claim For Fraud And To Allege Fraud With Particularity

Federal Rule of Civil Procedure 9(b) requires that, when fraud or mistake is alleged, "a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). An allegation of fraud is sufficient if it "identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (internal citations and quotations omitted). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v.*

---

[4]Although Lynch raised specific issues regarding her mental capacity to contract in her original Complaint, those allegations are absent from the FAC.

*Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). A plaintiff must also

explain why the alleged conduct or statements are fraudulent. *In re GlenFed, Inc.*

*Sec. Litig.*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994) (en banc), *superseded by statute*

*on other grounds by* 15 U.S.C. § 78u-4.

Fraud claims must additionally be pled consistent with state law. In

Hawaiʻi—

> Fraud and fraudulent misrepresentation share the same elements.
> *Compare Fisher v. Grove Farm Co.*, 123 Haw. 82, 103, 230 P.3d
> 382, 403 (Haw. Ct. App. 2009) (stating the elements of a fraud
> claim) *with Ass'n of Apartment Owners*, 115 Haw. at 263, 167
> P.3d at 256 (stating the elements of a fraudulent
> misrepresentation claim). Like fraudulent misrepresentation,
> the elements of fraud are "1) false representations made by the
> defendant, 2) with knowledge of their falsity (or without
> knowledge of their truth or falsity), 3) in contemplation of
> plaintiff's reliance upon them, and 4) plaintiff's detrimental
> reliance." *Fisher*, 123 Haw. at 103, 230 P.3d at 403.

*Prim Liab. Co. v. Pace-O-Matic, Inc.*, 2012 WL 263116, at *8 (D. Haw. Jan. 30,

2012).

Lynch does not properly allege the circumstances that constitute fraudulent

conduct by Countrywide with respect to the 2007 Mortgage. The FAC does not

sufficiently identify such facts as the times, dates, places, or other details of the

alleged fraudulent activity. *Neubronner*, 6 F.3d at 672. Nor does the FAC explain

how the alleged increase in the appraised value of her home and subsequent cash-out

refinancing amounted to fraud by Countrywide.   *See* FAC ¶¶ 186–202.   Lynch

alleges that—

> 224.  No signed 1003 loan application has ever been
> produced,[5] the Lynch CLUES data differed significantly
> from reality and while the neighborhood highest
> comparable was $819,520 for a larger home and lot, the
> market value assigned to Lynch was $850,000 in the 2007
> closing paperwork – in order to cover the $693,000 LTV
> of 1st and 2nd mortgages.
>
> 225.  Thus, the alleged market value drove the appraised value
> of the Lynch property up over 80% in four short years,
> nearly doubling the original purchase price.

FAC ¶¶ 284–85.   Lynch fails to address how any of this alleged conduct is

fraudulent and fails to explain the meaning or import of the "CLUES data [that]

differed significantly from reality."   *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at

1548 n.7.   These allegations fall short of the particularity required by Rule 9(b).

Nor does Lynch satisfy the Rule 9(b) pleading requirements with respect to

the 2010 nonjudicial foreclosure proceeding.   She alleges generally that Defendants

concealed the identity of Fannie Mae and filed "false" documents with the BOC and

state courts, as follows—

---

[5] An unsigned loan application is attached to the FAC, which indicates that it was prepared by
Steven Gillespie for Countrywide, dated March 16, 2007, along with credit reports and required
disclosures.   *See* Dkt. No. 46-1; *see also* FAC ¶ 300 ("On the loan app/docs it shows Steven
Gillespie this application was taken by, marked phone-03/15/2007 and his phone number of
805-650-2400.").

173.    In the present case with Lynch, BAC and Fannie committed intrinsic fraud, such as filing materially false NJF documents, affidavit, assignment of mortgage and Mortgagee's Quitclaim Deed Pursuant to Power of Sale in the Hawaii Bureau of Conveyances, their motions, declarations, exhibits and affidavits in Court including, but not limited to its Plaintiff's Motion for Summary Judgment and Writ of Possession wherein they knowingly concealed the real party in interest, the actual mortgagee, owner and investor Federal National Mortgage Association aka Fannie Mae, throughout the entire non-judicial foreclosure process.

174.    Compounding the intrinsic fraud, BAC deceptively represented it sold the Lynch property after foreclosure auction to Fannie, who already owned and/or controlled the Lynch Note and security interest or held it in a trust for other investors.

        ****

279.    Fannie didn't join the action until after it fictitiously bought the property after the auction. Fannie was concealed and this extrinsic fraud, deception and blatant misrepresentation damaged Lynch because there were various federally sponsored programs available to Lynch in 2008 – 2012 and even now, that could have helped her save her home.

280.    Fannie's unknown use of securitization vehicles would warrant a delay in the ability to initially appear as Plaintiff if Fannie would first have to buy-back the loan out of a securitized trust. It would also expose the federally sponsored [government sponsored enterprise ("GSE")] to excess debt issues that were already clouding Fannie and Freddie's not so rosy picture, not to mention the exposure of direct loan sales to Fannie would increase foreclosure lawsuits and legal costs plaguing the near defunct GSE.

281. It is also plausible that while Fannie may have been a Trustee, the ownership of the collateral actually belonged to investors of the securitized trust. The conspiracy of a nonjudicial foreclosure and rigged sale by the servicer to Fannie would eliminate the need to produce the Lynch Note or have the rightful ownership questioned.

FAC ¶¶ 173–74, 279–281. These legal conclusions devoid of factual enhancement fall far short of the particularity required by Rule 9(b) for averments of fraud, and, moreover, fail to state a plausible claim for relief.

Fraud claims, "in addition to pleading with particularity, also must plead plausible allegations. That is, the pleadings must state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'" *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566 (2007)). Lynch summarizes her theory that the 2010 foreclosure sale was fraudulent in the following manner—

(1) Fannie's actual ownership was intentionally concealed; (2) the documents used to fast track the Lynch nonjudicial foreclosure were manufactured to maintain the concealment and created an intrinsic fraud; (3) there are no legitimate documents to support a claim that Fannie legally assigned its rights to BAC; (4) BAC had no [Countrywide] liabilities to have created actual concrete injury. Bank of America acquired Countrywide, but it did not assume its liabilities. Instead, the assets and liabilities of Countrywide were held separately in the formerly public company Countrywide Financial Corporation.

FAC ¶ 289.[6]   Even assuming the truth of these allegations, Lynch fails to state a

claim for fraud.   For instance, she does not explain how Fannie's supposed

concealment harmed her, nor does she identify harm caused by an assignment that

she claims did not occur.   Further, Lynch does not identify what documents were

"manufactured" or how.   Because the FAC fails to allege the elements of fraud with

respect to any Defendant relative to the 2010 non-judicial foreclosure, these claims

are DISMISSED, with leave to amend.

    To the extent Lynch's claims are premised on a promised loan modification

from sometime in 2009 throughout the pendency of this litigation, the FAC fails to

offer sufficient details as to the time, place, or content of the allegedly fraudulent

statements.   Further, the fraud claims with regard to a potential loan modification

appear to be based on future events or inferences of mere broken promises.[7]   *See,*

---

[6]To the extent these allegations challenge the assignment of the 2007 Mortgage underlying the 2010 nonjudicial foreclosure, the FAC fails to state a claim.   *See Lizza v. Deutsche Bank Nat. Tr. Co.*, 1 F. Supp. 3d 1106, 1119–20 (D. Haw. 2014) (The court rejected Plaintiffs' challenge to Defendant's filings in the non-judicial foreclosure that "reference the assignments recorded in the Hawaii Bureau of Conveyances, and omit any information about the actual conveyance through securitization, [where] Plaintiffs claim that Defendant took such actions to conceal 'any defects or unresolved complexities that might exist in the chain of title,' in order to expedite the foreclosures of Plaintiffs' Properties."   The district court held that "Defendant was not required to establish its chain of custody in its filings related to the non-judicial foreclosure, and Defendant's omission of information regarding the securitization of Plaintiffs' mortgages does not violate Hawaii's Non–Judicial Foreclosure Statute, in effect at the time of the foreclosures.") (citing Haw. Rev. Stat. § 667–5 (repealed by Session Laws 2012, ch. 182, eff. June 28, 2012)).

[7]Under Hawaiʻi law, the false representation forming the basis of a fraud claim "must relate to a past or existing material fact and not the occurrence of a future event."   *Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.*, 107 Hawaiʻi 423, 433, 114 P.3d 929, 939 (Ct. App. 2005) (citations and block quote format omitted).   Moreover, "[f]raud cannot be predicated on statements which are

*e.g.*, FAC ¶ 310 ("BANA made numerous promises over the phone that they were modifying my loan, that because of their merger the[] packet was just behind, that because [I] had faxed documents, and gave info verbally over the phone, that just waiting for the paperwork WAS NOT A PROBLEM as they had started my file."). Lynch's allegation that Defendants somehow promised her that she would qualify for loan modification, or even that BANA promised her that it would consider her application if she defaulted, cannot support a plausible fraud claim unless Lynch can also allege that, when Defendants made those promises, they never intended to fulfill them. *See Doran v. Wells Fargo Bank*, 2011 WL 2160643, at *12 (D. Haw. May 31, 2011). Because the Court finds that Lynch *may* be able to cure the deficiencies set forth above, limited leave to amend this aspect of her fraud claim is permitted.

In sum, the FAC both fails to state a plausible claim for fraud and also to satisfy the particularity requirements of Rule 9(b). Defendants' Motion is GRANTED with respect to claims sounding in fraud. Because amendment may be possible, however, Lynch is granted one final attempt to cure the deficiencies in her

---

promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events[.]" *Id.* (citations and block quote format omitted). The exception to this general rule is that "[a] promise relating to future action or conduct will be actionable…if the promise was made without the present intent to fulfill the promise." *Id.* (citations and block quote format omitted). *See also Doran v. Wells Fargo Bank*, 2011 WL 2160643, at *12 (D. Haw. May 31, 2011) (citing *Maryl Group, Inc.*).

fraud-based claims.   She may not, however, re-allege any claims that are

time-barred.

### B.     The FAC Fails To State A Quiet Title Claim

The Court previously dismissed with leave to amend Lynch's statutory quiet

title claim.   *See* 11/15/16 Order at 6–7 (dismissing claim under HRS § 669-1(a),

which provides that a quiet title "[a]ction may be brought by any person against

another person who claims, or who may claim adversely to the plaintiff, an estate or

interest in real property, for the purpose of determining the adverse claim").

Although the FAC does not expressly re-allege a statutory quiet title claim, Lynch

makes reference to the clouded state of the Property's title—

> 290.   Plaintiffs' concealment, intrinsic and extrinsic frauds are
> continuing violations.   While the fictitious, deceptive and
> fraudulent documents filed to effectuate the NJF and the
> fabricated Mortgagee's Quitclaim Deed Pursuant to
> Power of Sale were created in 2009, the documents remain
> clouding the title and injurious to Lynch on a continuing
> daily basis in the public records.
>
> 291.   Whether in the Hawaii Bureau of Conveyances or the
> Hawaii Courts, the Plaintiffs' allow the documents to
> remain and continue to perpetuate the scheme to conceal
> the real party in interest ultimately damaging Lynch.

FAC ¶¶ 290–91.

To the extent Lynch seeks to quiet title to the property, the FAC once again

fails to allege that she is able to tender the amount of indebtedness.   *See Nat'l*

*Mortg. Ass'n v. Kamakau*, 2012 WL 622169, at *9 (D. Haw. Feb. 23, 2012) ("A basic requirement of an action to quiet title is an allegation that plaintiffs are the rightful owners of the property, *i.e.*, that they have satisfied their obligations under the [note and mortgage].") (internal quotation marks and citation omitted); *Benoist v. U.S. Bank Nat'l Ass'n*, 2012 WL 3202180, at *10 (D. Haw. Aug. 3, 2012) ("[T]ender is required, regardless of whether the claim is based on common law or statute."); *Caraang v. PNC Mortg.*, 795 F. Supp. 2d 1098, 1126 (D. Haw. 2011) ("In order for mortgagors to quiet title against the mortgagee, the mortgagors must establish that they are the rightful owners of the property and they have paid, or are able to pay, the amount of their indebtedness.").

Despite the Court's prior directions, Lynch does not allege that she has paid the outstanding loan balance or that she is able to do so. For these reasons, Lynch again fails to state a claim for quiet title, and any such claim must be dismissed. Because the Court previously granted leave to amend, and Lynch failed to correct the deficiencies in the FAC, to the extent such a claim is asserted, dismissal is without further leave to amend.

## C.     <u>The FAC Fails To State A RESPA Claim</u>

The Court previously dismissed with leave to amend Lynch's claims that BANA violated RESPA, 12 U.S.C. § 2605, based upon a series of communications regarding the terms of the 2007 Mortgage and her attempted loan modification. *See*

11/15/16 Order at 15–17. The FAC does not expressly re-allege the dismissed RESPA claim, but refers to BANA's purported failure to respond to a 2009 Qualified Written Request ("QWR") sent by her attorney. *See* FAC ¶ 303 ("Orig in 2009 my atty at the time Mr. Gary Dubin sent a QWR/rescission of the loan in July 2009. To my knowledge to this day it was never responded to.").

To the extent Lynch attempts to assert a claim for violation of 12 U.S.C. § 2605(e) based on BANA's failure to respond to a QWR, her allegations are deficient. Lynch asserts in only the most vague terms the existence of a QWR—Lynch does not attach a copy of the request, does not describe the content of any communications, including whether they concerned the servicing of her loan, as defined by RESPA, and generally does not describe the communications in sufficient detail to determine whether they triggered a duty to respond.[8] Accordingly, she fails to state a cognizable RESPA claim. *See Rey v. Countrywide Home Loans, Inc*., 2012 WL 253137, at *6 (D. Haw. Jan. 26, 2012) (citing *Lettenmaier v. Fed. Home Loan Mortg. Corp*., 2011 WL 3476648, at *12 (D. Or. Aug. 8, 2011) (dismissing RESPA claim where "plaintiffs fail to attach a copy of

---

[8]RESPA provides that "[i]f any servicer of a federally related mortgage loan receives a [QWR] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days[.]" 12 U.S.C. § 2605(e)(1)(A). After receiving the QWR, within sixty days, the loan servicer must either correct the borrower's account or, after conducting an investigation, provide the borrower with a written explanation of: (1) why the servicer believes the account is correct; or (2) why the requested information is unavailable. *See* 12 U.S.C. § 2605(e)(2).

their correspondence to the Complaint or to allege facts showing that the communication concerned servicing of the loan as defined by the statute")); *Manzano v. Metlife Bank N.A.,* 2011 WL 2080249, at *7 (E.D. Cal. May 25, 2011) (Plaintiff "cannot simply allege in conclusory fashion that the written correspondence constituted QWRs.").

Any RESPA claim further fails because the FAC does not allege any actual damages.   Under 12 U.S.C. § 2605(f)(1), Lynch has the burden to plead and demonstrate that she has suffered damages.   Because damages are a necessary element of a RESPA claim, failure to plead damages is fatal.   *See, e.g., Rey*, 2012 WL 253137, at *5 (citing *Esoimeme v. Wells Fargo Bank*, 2011 WL 3875881, at *14 (E.D. Cal. Sept. 1, 2011) (dismissing claim where the plaintiff failed to "allege any pecuniary loss from defendant's alleged failure to respond to the QWR")); *Shepherd v. Am. Home Mortg. Servs.*, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages.") (quoting *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006)).   Indeed, although the requirement that a borrower plead damages is interpreted liberally, "the [borrower] must at least allege what or how the [borrower] suffered the pecuniary loss."   *Ash v. OneWest Bank, FSB*, 2010 WL 375744, at *6 (E.D. Cal. Jan. 26, 2010).

Lynch fails to allege a RESPA claim against any party, and Defendants'

Motion is GRANTED as to this claim.   Because the Court previously granted leave

to amend, and Lynch failed to correct the deficiencies in the FAC, to the extent a

RESPA claim is asserted, dismissal is without further leave to amend.

### D.    The FAC Fails To State A Claim Under ECOA

Defendants seek dismissal of any ECOA violation alleged in the FAC.   *See*

15 U.S.C. § 1691.   In its 11/15/16 Order, the Court dismissed with leave to amend

Lynch's claims that BANA violated ECOA and Regulation B by failing to notify her

within 60 days of "the action taken on [her] loan modification application."

11/15/16 Order at 17–18 (quoting Complaint ¶ 39).   It is unclear whether Lynch

seeks to re-allege an ECOA claim in the FAC.   However, to the extent she does,[9]

the claim is deficient and once again fails to set forth the required elements.[10]

First, Lynch does not allege that she is a member of a protected class.   Under

Section 1691(a)(1), it is unlawful to discriminate against any applicant on the basis

of race, color, religion, national origin, sex or marital status, or age.   The FAC, like

---

[9]Lynch alleges that, "under [federal] guidelines that cover the mortgage banking and loan system, I am federally legally disabled.   [BANA] said in my CPA's office to her and I on a conference call, as she had power of atty for me, 'they would not modify my loan if any of my income came from disability) that is breaking a federal law and a major part of my case.'"   FAC ¶¶ 308–09.

[10]In general, a plaintiff alleges an ECOA violation by asserting that "(1) she is a member of a protected class; (2) she applied for credit with defendants; (3) she qualified for credit; and (4) she was denied credit despite being qualified."   *Hafiz v. Greenpoint Mortg. Funding, Inc*., 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009); *Blair v. Bank of Am., N.A*., 2012 WL 860411, at *12 (D. Or. Mar. 13, 2012).

the original Complaint, is silent in this regard.   Second, any ECOA claim related to

BANA's non-response or denial of her modification application once more fails to

allege that Lynch was even qualified to receive a modification or to allege any facts

from which the Court could infer she was qualified to receive any modification.

Accordingly, Lynch fails to state a claim for violation of ECOA.

The Court therefore GRANTS Defendants' Motion and dismisses any ECOA

claim alleged in the FAC.   Because the Court previously granted leave to amend,

and Lynch failed to correct the deficiencies in the FAC, to the extent an ECOA claim

is asserted, dismissal is without further leave to amend.

### E.    The FAC Fails To State A UDAP Claim

Although unclear, to the extent Lynch seeks to re-allege a claim under HRS

Chapter 480, the FAC again fails.   *See* FAC ¶ 294 ("In this case the underlying

deceit and falsified real party of interest continues throughout the entire

proceedings."); *id.* at ¶ 296 ("The repeated pattern of deceptive behavior is tied

directly to the initial [nonjudicial foreclosure] process and procedure, Court actions

and continue today.").

Pursuant to Section 480-13, a successful UDAP claim must establish three

elements: (1) a violation of HRS chapter 480; (2) which causes an injury to the

plaintiff's business or property; and (3) proof of the amount of damages.   *Davis v.*

*Four Seasons Hotel Ltd.*, 122 Hawai'i 423, 435, 228 P.3d 303, 315 (2010).   Section

480-2(a) states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." The Hawaii Supreme Court "has described a deceptive act or practice as having the capacity or tendency to mislead or deceive." *Courbat v. Dahana Ranch, Inc.*, 111 Hawaiʻi 254, 261, 141 P.3d 427, 434 (2006) (citation and quotation marks omitted).[11] A UDAP claim alleging fraudulent business practices must be pled with particularity pursuant to Rule 9(b). *Smallwood v. Ncsoft Corp.*, 730 F. Supp. 2d 1213, 1232 (D. Haw. 2010). As discussed above, Lynch fails to allege the fraudulent conduct or content of the unfair and deceptive practice. *See Neubronner*, 6 F.3d at 672.

Moreover, a UDAP claim cannot be based on any alleged failure to offer a loan modification because Lynch has not established a right to such modification. And to the extent her UDAP claims are based on BANA's refusal to modify the loan or negotiate in good faith, she does not present a sufficient factual basis for the alleged promise to modify the loan, or subsequent "bait and switch." *See Dias v. Fed. Nat. Mortg. Ass'n*, 990 F. Supp. 2d 1042, 1055 (D. Haw. 2013).

---

[11]Under Hawaii law, "a deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under circumstances where (3) the representation, omission, or practice is material." *Courbat*, 111 Hawaiʻi at 262, 141 P.3d at 435 (quotation and alteration signals omitted). "A representation, omission, or practice is considered 'material' if it involves 'information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" *Id*. (citing *Novartis Corp. v. FTC*, 223 F.3d 783, 786 (D.C. Cir. 2000)).

Consequently, any UDAP fails to satisfy the particularity requirement of Rule 9(b) and fails to state a claim under Rule 12(b)(6).   Because amendment may be possible with respect to her claims sounding in fraud as discussed above, dismissal is with limited leave to amend.

### F.      The FAC Fails To State A Claim For Rescission

Generally "[r]escission is only a remedy, not a cause of action."   *Bischoff v. Cook*, 118 Hawai'i 154, 163, 185 P.3d 902, 911 (App. Ct. 2008).   The remedy thus "rises or falls with the other claims."   *Phillips v. Bank of Am.*, 2011 WL 240813, at *9 (D. Haw. Jan. 21, 2011) (citation and brackets omitted).   To the extent Lynch seeks rescission of the 2007 Mortgage, she fails to state an affirmative claim for relief or that she is entitled to the remedy she seeks.

### 1.      No Entitlement To Rescission Under Chapter 480

Rescission may be possible under HRS § 480-12.   However, a plaintiff seeking affirmatively to void a mortgage transaction under Section 480-12 must be able to "place the parties in as close a position as they held prior to the transaction." *See, e.g.*, *Skaggs v. HSBC Bank USA, N.A.*, 2010 WL 5390127, at *11 (D. Haw. Dec. 22, 2010); *see also Beazie v. Amerifund Fin., Inc.*, 2011 WL 2457725, at *12 (D. Haw. June 16, 2011) ("Indeed, avoidance of a contract and restitution and/or rescission, *i.e.,* treating the agreements as void *ab initio* and placing the parties in the positions they held prior to the transaction, go hand-in-hand to carry out this result

and prevent a windfall to one party."); *Lee v. HSBC Bank USA*, 121 Hawaiʻi 287, 292, 218 P.3d 775, 780 (2009) (holding that where an agreement created at a foreclosure sale is void and unenforceable for failure to comply with HRS § 667-5, then "[t]he high bidder at such a sale is entitled only to return of his or her down payment plus accrued interest").

Lynch does not allege she has the ability to tender loan proceeds back to the lender, as necessary to obtain rescission. *See, e.g., Young v. Bank of N.Y. Mellon*, 848 F. Supp. 2d 1182, 1193-94 (D. Haw. 2012) ("[A] plaintiff seeking affirmatively to void a mortgage transaction under § 480-12 must be able to 'place the parties in as close a position as they held prior to the transaction.'") (quoting *Skaggs*, 2011 WL 3861373, at \*11); *Au v. Republic State Mortg. Co.*, 2013 WL 1339738, at \*13 (D. Haw. Mar. 29, 2013).

### 2. No Right To Set Aside Prior Orders

To the extent Lynch requests an order rescinding or setting aside a state court order in the ejectment action or with respect to the nonjudicial foreclosure sale, she has not established any entitlement to the relief she seeks. Aside from the deficiencies with the individual causes of action noted above, any claims relating to final state court judgments are likely barred by the *Rooker–Feldman* doctrine. Under *Rooker–Feldman*, federal district courts are precluded from reviewing state court judgments in "cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district court proceedings and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005).

### G. Summary

In sum, the Court grants Defendants' Motion to Dismiss and grants Lynch limited leave to amend. Claims alleged in the FAC relating to (1) the origination of the 2007 Mortgage loan refinancing; (2) statutory quiet title; (3) RESPA violations; and (4) ECOA violations, are dismissed with prejudice and may not be re-alleged. Because Lynch was previously granted leave to amend her allegations to attempt to cure the specific deficiencies identified in the Court's 11/15/16 Order, and having either been unable to do so or having abandoned these claims, any further attempt to amend these particular claims would be futile. In recognition of her pro se status, Lynch is once more permitted limited leave to amend, with specific instructions detailed more fully below.

## II. Limited Leave To Amend Is Granted

The Court GRANTS limited leave to file an amended complaint, consistent with the terms of this Order, by **October 6, 2017**. Lynch is granted leave to attempt to amend the claims that have not been dismissed with prejudice and those that are not time-barred. To be clear, Lynch's statutory quiet title, RESPA, and ECOA claims, as well as the time-barred claims relating to the 2007 loan origination are

DISMISSED WITH PREJUDICE.   Lynch is permitted one final attempt to file an amended complaint in order to cure the specific deficiencies identified in this Order.

If Lynch chooses to file an amended complaint, she must write short, plain statements, which clearly allege the following: (1) the constitutional, statutory, or common law right she believes was violated; (2) the name of the defendant who violated that right or law; (3) exactly what that defendant did or failed to do; (4) how the action or inaction of that defendant is connected to the violation of law; and (5) what specific injury Plaintiff suffered because of that defendant's conduct.   *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).   Plaintiff must repeat this process for each person or entity named as a defendant.   If Plaintiff fails to affirmatively link the conduct of each named defendant with the specific injury suffered, the allegation against that defendant will be dismissed for failure to state a claim.   Plaintiff should include separate counts or causes of action for each claim.   *See E.E.O.C. v. Glob. Horizons, Inc*., 2011 WL 5325747, at *15 (D. Haw. Nov. 2, 2011) (Noting that "it would certainly 'promote clarity' if Plaintiff separated its multiple causes of action into distinct counts rather than stringing together sixty-one paragraphs without meaningful delineation between them and direct[ing] Plaintiff to do so if it chooses to file an amended complaint pursuant to this Order."); *cf. Bautista v. Los Angeles Cty.*, 216 F.3d 837, 840–41 (9th Cir. 2000) ("Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or

occurrences, and where separate statements will facilitate a clear presentation.") (citations omitted).

An amended complaint generally supersedes a prior complaint, and must be complete in itself without reference to the prior superseded pleading. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc). Claims dismissed without prejudice that are not re-alleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey*, 693 F.3d at 928 (stating that claims dismissed with prejudice need not be re-alleged in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not re-pled). Lynch may not re-allege any claims dismissed with prejudice.

The amended complaint must designate that it is the "Second Amended Complaint" and may not incorporate any part of the original Complaint or First Amended Complaint. Rather, any specific allegations must be retyped or rewritten in their entirety. Failure to file an amended complaint by **October 6, 2017** will result in automatic dismissal of this action without prejudice.

## III. <u>Lynch's Requests For Additional Time Are Denied</u>

Following the conclusion of briefing on Defendants' Motion, Lynch filed two requests for additional extensions of time to oppose the Motion and to file an amended complaint. *See* 8/21/17 Mot. to Extend, Dkt. No. 64; 8/22/17 Mot. to

Extend, Dkt. No. 65.   On August 24, 2017, Defendants filed an Objection, asking the Court to deny Lynch's requests, or, in the alternative, to appoint a Guardian *ad litem* on behalf of Lynch pursuant to Federal Rule of Civil Procedure 17(c).   Dkt. No. 67.   The Court DENIES Lynch's requests and DENIES as moot Defendants' request to appoint a Guardian *ad litem*.

Lynch asserts that her original Opposition, filed July 25, 2017 (Dkt. Nos. 60 and 61), was "incomplete" and she therefore seeks "to respond and Oppose the Motion to Dismiss and Request[s] to Amend [her] Complaint," and asks for an extension of six weeks to accomplish this filing.   Dkt. No. 65 ¶ 11.   Her professed "intention is to file [her] response and request to amend with the second amended complaint at the same time." *Id.* at 7, ¶ 17.   No proposed amended complaint was included with her request.   Lynch did, however, include a note from a medical provider, Tim Kaneda, PA-C, MHS, suggesting that she is "unable to type."[12]

Lynch initiated this civil action considerably over one year ago—on April 4, 2016.   Despite that period of time, the pleadings have yet to close, largely because

_____

[12]As Defendants' note, in his prior letter to the Court in support of her request for a briefing extension (Dkt. No. 58), Kaneda, the Physician's Assistant, referred to a July 13, 2017 "fall down the stairs," and recommended that Lynch "refrain from any over activity of her motor/mobility skills."   Defs.' Obj. at 8 (quoting 7/18/17 Request).   Kaneda's most recent letter, dated August 17, 2017, refers to Lynch's prior injuries, and states that she "did not receive appropriate treatment for her injuries from the fall," is "unable to type," and asserts that she "should not be writing, signing or filing any legal documents at this time due to her medical condition."   8/17/17 Kaneda Letter.   Kaneda "recommend[s] that Ms. Lynch be given a continuance to finish and amend her documents as she has not been medically stable enough to complete these tasks.   [He] request[s] that the court give her at least a six week continuance." *Id.*

of the extensions of time and continuances requested by Lynch. *See* Dkt. Nos. 13, 16, 21, 42, 52, 54, 56, and 58. In light of her pro se status and, on repeated occasions, her professed confusion and inability to meet litigation demands, the Court accommodated Lynch and granted her requests for extension. If, however, she no longer intends to diligently prosecute the civil action that she initiated, Lynch retains the ability to voluntarily dismiss it within the limits afforded by Federal Rule of Civil Procedure 41.

Lynch's current requests for additional time pertain to Defendants' Motion—filed March 1, 2017—which has been awaiting adjudication for several months. The opposition to the Motion was originally due in late April 2017 based upon the Court's May 19, 2017 hearing date. After repeated requests for extensions of time (*see* Dkt. Nos. 52, 54, 56), each one approved by the Court (*see* Dkt. Nos. 53, 55, 57), Lynch eventually filed her Opposition on July 25, 2017. Defendants filed their Reply on August 14, 2017, and having done so, Lynch now claims to need additional time to respond. *See* Dkt. Nos. 64 and 65. No response, however, is warranted at this time. *See Stewart v. Bezy*, 473 Fed. Appx. 752, 753 (9th Cir. 2012) (Although a pro se litigant is afforded some degree of leniency "a district court need not extend deadlines indefinitely.").

Lynch is not entitled to file any additional briefing with respect to Defendants' Motion, nor is an extension of six weeks justified in order to

accomplish such a filing.   Lynch's July 25, 2017 filings were her response to

Defendants' Motion.   To the extent she now asks for an extension of time in which

to submit a sur-reply, leave of court is denied.[13]   *See* LR7.4.[14]

To the extent Lynch requests a further extension of time in which to file an

amended complaint, any such motion is DENIED.   Lynch failed to include the

proposed amended complaint for consideration.   *See* LR10.3.   Lynch will suffer no

prejudice, in any event, given that limited leave to amend has been afforded in

conjunction with the Court's ruling on Defendants' Motion.

_____

[13]To the extent Lynch asserts that her prior opposition briefs were "incomplete," or that she did not intend for them to stand as her briefs, her explanation is disingenuous.   The Court's August 4, 2017 order was clear: "Plaintiff Patricia Lynch, proceeding pro se, filed two documents: (1) Plaintiff's Opposition to Defendant's Request of Judicial Notice In Support of Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 60); and (2) Plaintiff's Exhibits A-E for Opposition to Defendant's Request of Judicial Notice In Support of Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 61).   The Court construes Lynch's July 25 filings as her Opposition to Defendant's Motion to Dismiss (Dkt. No. 49) and Request for Judicial Notice (Dkt. No. 50).   Lynch's Fourth Motion for Extension of Time (Dkt. No. 58) is therefore DENIED as moot.   Defendant's Reply remains due by August 14, 2017."   Dkt. No. 62.   This order, entered ten days before the deadline for Defendants' Reply, unambiguously construed Lynch's July 25 filings as her Opposition to Defendants' filings.   At no time before Defendants filed their Reply, nor simultaneous to the filing of her July 25 briefing, did she raise the issue of completeness or indicate that it was a partial filing.   Only one week *after* Defendants' Reply was on file did Lynch seek an extension of time to file additional briefing, which constitutes "supplemental briefing" and therefore requires leave of court pursuant to Local Rule 7.4.   *See* LR7.4 ("No further or supplemental briefing shall be submitted without leave of court.").

[14]Moreover, despite the professed obstacles to meeting her filing deadlines, and contrary to the prior cognitive contentions of her Physician's Assistant (*see*, *e.g.*, Dkt. No. 56), Lynch has shown the ability to type and file organized, complete submissions that belie the sort of problems she and her medical provider assert.   For example, neither her July 21, 2017 request—filed when she claims her typing assistant was unavailable—nor her August 21, 2017 request for extension of time can be fairly characterized as plagued by disorganization, "brain fog," "memory loss," or cognitive deficits of the type described by her Physician's Assistant, and, in fact, are highly organized, accurately recount the procedural history of this case, and present her requests for additional time with declarations and evidentiary support and in a logical manner.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED. Dkt. No. 49. Lynch's requests to extend the briefing deadlines to allow her to supplement her opposition and amend her complaint are DENIED. Dkt. Nos. 64 and 65.

Lynch is once more granted limited leave to file an amended complaint, consistent with the terms of this Order. Lynch is cautioned that failure to file an amended complaint by **October 6, 2017** will result in the dismissal of this action without prejudice. The Court further cautions Lynch that no extension of time in which to file an amended complaint will be granted absent good cause shown.

IT IS SO ORDERED.

DATED: September 6, 2017 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Lynch v. Fed. Nat'l Mortg. Ass'n et al.*; CV 16-00213 DKW-KSC; **ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND; AND (2) DENYING PLAINTIFF'S MOTION TO EXTEND BRIEFING DEADLINES**