IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| DONNA LYNCH,<br><br>        Plaintiff,<br><br>  vs.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al.*,<br><br>        Defendants. | Case No. 16-cv-00213-DKW-RT<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS, (2) DENYING DEFENDANTS' MOTION TO STRIKE; AND (3) DISMISSING THE SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND** |

Plaintiff Donna Lynch, proceeding pro se, initiated this action more than three years ago in State court.   Despite that age, little has occurred in this case during that significant period of time.   As but one example, the pleadings have yet to be settled.     That ends today.   No more extensions of time.   No more opportunities to amend the operative complaint.   No more excuses.   Because Lynch, now on her Second Amended Complaint (SAC), has still failed to cure the deficiencies in her claims, as explained to her on previous occasions by this Court, claims that are, in any event, barred by res judicata, the SAC is DISMISSED. Moreover, because the SAC represents Lynch's third attempt to plead claims in this action, further leave to amend is DENIED.

# RELEVANT PROCEDURAL BACKGROUND

Because the procedural background has been set forth, at length, in the Court's prior orders, Dkt. Nos. 40, 68, the Court picks up where it left off -- with its Order entered September 6, 2017 ("the September 6, 2017 Order"), Dkt. No. 68. Therein, the Court granted Defendants', Federal National Mortgage Association ("Fannie Mae"), Countrywide Home Loans, Inc. ("Countrywide"), and Bank of America, N.A. ("BOA," and with Fannie Mae and Countrywide, "Defendants"), motion to dismiss the First Amended Complaint (FAC) with limited leave to amend. Specifically, Lynch was allowed leave to amend her (1) claim of fraud concerning the 2010 foreclosure of the property located at 66 Haku Hale Place, Lahaina, Hawaiʻi 96761 ("the Property"), (2) claim of fraud concerning a loan modification, and (3) claim for unfair and deceptive practices under Hawaiʻi Revised Statutes Chapter 480 ("UDAP"). The Court dismissed with prejudice, and, thus, gave no leave to amend Lynch's (1) claim to quiet title, (2) claims under the Real Estate Settlement Procedures Act (RESPA), (3) claims under the Equal Credit Opportunity Act (ECOA), and (4) claim of fraud concerning the origination and recording of a loan/mortgage in 2007 ("the 2007 Mortgage").

In the September 6, 2017 Order, Lynch was expressly forewarned that she was being provided "one final attempt" to cure the deficiencies with her claims. Dkt. No. 68 at 30.

On October 6, 2017, Lynch filed a Second Amended Complaint (SAC)–the operative pleading in this case. Dkt. No. 72. On November 3, 2017, Defendants moved to dismiss the SAC on various grounds, including the failure to state a claim and/or plead fraud with particularity ("the Motion to Dismiss"). Dkt. No. 76-1.[1] A hearing on the Motion to Dismiss was initially scheduled for January 5, 2018. Dkt. No. 78.

The hearing, however, never took place because, since the filing of the Motion to Dismiss, this case has essentially been on a substantive, but not a procedural, pause. With a hearing scheduled for January 5, 2018, Lynch's response to the Motion to Dismiss was due on December 15, 2017. *See* Local Rule 7.4. On December 13, 2017, Lynch filed her first motion for extension of time to respond to the Motion to Dismiss, citing injuries and the potential that an attorney might represent her in this action. Dkt. No. 85. The Court granted the

---

[1] At the same time, Defendants also requested that the Court take judicial notice of various documents. Dkt. No. 77.

first motion for an extension, vacated the January 5, 2018 hearing, and gave Lynch until January 12, 2018 to file a response to the Motion to Dismiss.   Dkt. No. 87.

On January 12, 2018, Lynch filed a second motion for extension of time to respond to the Motion to Dismiss, citing, in identical fashion, the reasons from the first motion for extension.   Dkt. No. 88.   The Court granted in part the second motion for extension, allowing Lynch until February 9, 2018 to file a response to the Motion to Dismiss.   Dkt. No. 89.

On February 2, 2018, Lynch filed a third motion for extension of time to respond to the Motion to Dismiss, which, once again and in almost identical fashion, cited injuries and the potential for an attorney to appear on Lynch's behalf. Dkt. No. 90.   On this occasion, the Court requested a response from Defendants, who objected to the extension Lynch sought.   Dkt. Nos. 91-92.   A hearing was then held on Lynch's motion for a third extension, at which the February 9, 2018 deadline to file a response to the Motion to Dismiss was held in abeyance and the parties were permitted to submit briefs on whether to conduct discovery with respect to Lynch's request for extending said deadline.   Dkt. No. 95.   After briefing was filed on the foregoing discovery matter, Dkt. Nos. 96-97, and a

hearing held, Dkt. No. 102, the Court ordered limited discovery related to the

medical reasons Lynch had provided for her requested extensions, Dkt. No. 101.[2]

A status conference was then held on August 6, 2018.   Dkt. No. 124.

Defendants informed that discovery was continuing on Lynch's medical concerns

and that a State appellate court had issued an order and judgment in a proceeding

involving Defendants, Plaintiff, and the Property.   Plaintiff, meanwhile, renewed

her request for a settlement conference.   The Court allowed the parties to contact

the Magistrate Judge for purposes of scheduling a settlement conference and

instructed Defendants to file a supplemental brief on the issue of res judicata.   On

September 6, 2018, Defendants filed a supplemental brief, arguing that all of

Lynch's claims were barred on the ground of res judicata.   Dkt. No. 131.[3]

Not long after the August 6, 2018 status conference, Lynch sent an email to

the Court requesting that a writ of eviction issued by a State court be set aside or,

alternatively, stayed until resolution of this case.   Dkt. No. 127.   The Court

declined to rule on the email because Lynch had failed to make her requests

_____

[2]At Lynch's request, the Court also allowed the parties to contact the Magistrate Judge assigned to this case in order to try to reach an informal resolution/settlement.   Soon thereafter, however, Lynch changed her mind and informed that she would not participate in a settlement conference. Dkt. No. 103.
[3]At the same time, Defendants also requested that the Court take judicial notice of various documents submitted in connection with their supplemental brief.   Dkt. No. 132.

through an appropriate channel.   Dkt. No. 128.   The Court noted, however, that Lynch's requests were likely barred by at least two principles of federal law.   *Id.*

On September 27, 2018, a series of settlement and/or status conferences began before the Magistrate Judge.   Dkt. No. 136.   These conferences continued through November 1, 2018, Dkt. Nos. 139, 141-142, but, ultimately, did not end in settlement of this case, *see* Dkt. No. 142.

On November 6, 2018, this Court held another status conference with the parties.   Dkt. No. 143.   The parties were instructed to reach agreement on any remaining disputes with respect to discovery on Plaintiff's medical concerns, and, if necessary, to file briefs addressing any unresolved disputes.   Soon thereafter, the Court entered a Second Amended Rule 16 Scheduling Order in order to accommodate the delays in this case.   *See* Dkt. No. 144.   Notably, trial was moved from January 14, 2019 to September 9, 2019.   Dkt. Nos. 84, 144.

On February 7, 2019, the Court held yet another status conference with the parties.   Dkt. No. 147.   With discovery as to Lynch's medical concerns appearing as complete as it might become, the Court instructed Defendants to file a response in opposition to Plaintiff's third motion for an extension of time to respond to the Motion to Dismiss.   Dkt. No. 147.   Defendants did so soon

thereafter.   Dkt. No. 152.   The Court then gave Lynch until March 19, 2019 to

file a reply.   Dkt. No. 153.   A reply was not and has not been filed.

On March 27, 2019, the Court addressed the motion for a third extension in

a Minute Order.   Dkt. No. 154.   For the reasons discussed therein, the Court

denied the third motion for an extension of time.[4]   The Court further instructed

Lynch to file an opposition to the Motion to Dismiss, the supplemental brief, and

the two requests for judicial notice by April 10, 2019.   *Id.*   On April 10, 2019,

_____

[4]Specifically, the Court ruled as follows:

> Lynch cites two reasons in support of her third request for more time.   First, she
> asserts that she has been consulting an attorney who may substitute in and
> represent her.   That assertion is now more than a year old, and no attorney has
> made an appearance on her behalf.   In fact, given that this litigation has been
> pending for nearly three years, without any attorney having made an appearance
> on Lynch's behalf, the Court concludes that none is likely to appear, and Lynch
> has been afforded more than ample opportunity to explore that possibility.
>
> Second, Lynch asserts that cognitive and physical deficits make responding to the
> Motion [to Dismiss] a challenge.   While that may have been true at one time, the
> information on which Lynch relies is likewise now more than a year old.   That
> information requested a delay until March 9, 2018, a date that has long since
> passed.   That her information is outdated is demonstrated by Lynch's numerous,
> coherent state court filings occurring as recently as January 2019 while similarly
> pro se, strongly indicating that whatever deficits she may at one time have had no
> longer exist.   That information is also suspect in light of the health care provider
> information offered by Defendants, which generally identifies little or no deficit
> of any kind, and certainly none that would warrant an extension beyond that
> already provided.   The Court also notes that Lynch was given an opportunity to
> provide additional information and/or respond to Defendants' February 26, 2019
> supplemental objection.   She was to do so by March 19, 2019, but instead filed
> nothing.

Dkt. No. 154 at 1-2 (citations omitted).

Lynch did not file a reply to any of the foregoing filings.    Instead, on that date,

Lynch filed a March 11, 2019 letter drafted by a physician assistant at Maui

Medical Group, Inc. that was not accompanied by any specific request or

document.    Dkt. No. 155.    The letter states that Lynch's "health has deteriorated

over the last 4 weeks" and she has been advised to travel to California for

evaluation and treatment.    The letter further states that Lynch "has an antibiotic

resistant infection in her right hand which is restricting the functions of her right

[hand].    She has a severe antibiotic resistant infection in her upper respiratory

system.    She has severe brain fog … [and] has abnormal blood counts."    The

letter also appears to request a six-week extension of any filing deadlines following

Lynch's treatment in California, the date of which is unknown.[5]    Defendants have

filed a motion to strike the letter or, alternatively, appoint a guardian ad litem on

Lynch's behalf ("the Motion to Strike").    Dkt. No. 156.

    It is there that the procedural history of this case ends.    Before going any

further, in light of the most recent filings–*i.e*., the letter dated March 11, 2019 and

the Motion to Strike–the Court believes it is necessary to address the same.    As

mentioned, the letter appears to request a six-week extension following the

---

[5]Indeed, whether Lynch, in fact, traveled to California for treatment is itself unknown.

unknown completion of Lynch's treatment. Put simply, that will not be happening. As the March 27, 2019 Minute Order should have made clear to Plaintiff, the Court's willingness to grant any further extensions on the ground of medical concerns has been thoroughly exhausted in this case. The Court acknowledges, given the more proximate nature of the letter dated March 11, 2019, that the medical concerns raised therein may be of a more relevant ilk than the ones Plaintiff raised in her third motion for an extension of time. The Court's principal reason for giving these "new" medical concerns no additional credence, however, remains unchanged: as this Court has observed, listened, and read, Lynch's conduct before the undersigned–whether through conversation at numerous status conferences or through writings in numerous filings–and in the State proceeding between the same parties to this action, demonstrates that Plaintiff is more than capable of pursuing this case which she initiated. Never, whether in the filings Plaintiff has made or in the words Plaintiff has spoken to the undersigned, has this Court ever considered that Lynch was unable to pursue this case. While the Court was prepared to allow discovery to proceed in order to delve deeper into Plaintiff's medical concerns, that process has run its course, and, as explained in the March 27, 2019 Minute Order, in a fashion showing that Plaintiff is able to litigate her claims. Most striking in that regard are the numerous filings Lynch has recently

made in the State proceeding between these same parties and involving the same Property. Some of those filings are mentioned in the March 27, 2019 Minute Order. *See* Dkt. No. 154 at 2. As Defendants assert in the Motion to Strike, Lynch has now filed even more, *see* Dkt. No. 156 at 4-5, all the while maintaining here that she was "not medically stable enough to prepare or file legal documents," *see* Dkt. No. 155. For the reasons discussed, an assertion such as that simply no longer passes muster with the Court. As a result, to the extent the letter dated March 11, 2019 can be construed as a fourth request to extend the time to respond to the Motion to Dismiss, it is denied.[6]

As for Defendants' request to appoint a guardian ad litem for Plaintiff, the Court declines to do so. As just explained, the Court has found, based upon the record before it, including the personal observations the undersigned has made, that Plaintiff is able to litigate her claims in this case. As far as the Court is concerned, therefore, there is no need for a guardian to be appointed to do the same. The fact that, for more than 18 months, Plaintiff has not litigated the substance of her claims does not change this decision.

---

[6]The Court, however, declines to strike the letter.

Put in context, this means the following. Currently pending before the Court is the Motion to Dismiss. As with any movant, Defendants will be required to show that they are entitled to the relief they seek–dismissal of the SAC. The Court now turns to that determination.

## STANDARD OF REVIEW

### I.     Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

A court may consider certain documents attached to a complaint, as well as documents incorporated by reference in the complaint or matters of judicial notice, without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003). As in prior orders, the Court takes judicial notice of the pleadings, court orders, and other public records that have been submitted in this case. *See* Fed.R.Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).[7]

## II.    Pro Se Status

Because Lynch is proceeding pro se, the Court liberally construes her filings. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). With that in mind,

---

[7]For example, the Court takes judicial notice of documents whose contents were incorporated by reference or attached to the SAC, including the 2007 Mortgage. The Court also considers matters that are the proper subject of judicial notice pursuant to Federal Rule of Evidence 201, such as the Court's own records and publicly available documents, which includes documents filed with the State courts in the ejectment action between Defendants and Plaintiff. *See Bartolotti v. Maui Mem'l Med. Ctr.*, 2015 WL 4545818, at *3 (D. Haw. July 28, 2015) ("Matters of public record that may be judicially noticed include … documents filed with courts, 'both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.'") (quoting *United States v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)).

"[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

A court may, however, deny leave to amend due to undue delay or failure to cure deficiencies by amendments previously allowed or where further amendment would be futile. *E.g.*, *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## DISCUSSION

In the Motion to Dismiss, Defendants argue, among other things, that the SAC should be dismissed for failure to state a claim, as well as for asserting claims and adding defendants for which leave to amend was not provided. In their supplemental brief, Defendants argue that all of the claims in the SAC are additionally barred by res judicata.

## I.  **Leave to Amend**

In its September 6, 2017 Order, the Court provided explicit and clear instructions to Lynch as to which claims had been dismissed with*out* leave to

---

To those extents, the request and supplemental request for judicial notice, Dkt. Nos. 77, 132, are granted.

amend and which had been dismissed *with* leave to amend.   As explained earlier, Lynch was allowed leave to amend her (1) claim of fraud concerning the 2010 foreclosure of the Property, (2) claim of fraud concerning a loan modification, and (3) UDAP claim for unfair and deceptive practices.   The Court dismissed with prejudice, and thus, gave no leave to amend Lynch's (1) claim to quiet title, (2) claims under RESPA, (3) claims under ECOA, and (4) claim of fraud concerning the origination and recording of the 2007 Mortgage.

In other words, Lynch was allowed leave to amend *three* claims.   In the SAC, Lynch asserts *nine* claims.   In addition, the SAC names two entities as defendants, Mortgage Electronic Registration System ("MERS") and Fannie Mae as Trustee for Securitized Trust Fannie Mae Guaranteed REMIC Pass-Through Certificates 2007-65 Trust ("the Trust"), that were never named as defendants in previous iterations of the complaint.   The September 6, 2017 Order did not provide Lynch with leave to assert nine claims or to name two new defendants. The **only** matters for which Lynch was provided leave to amend was to cure the deficiencies identified with the three claims identified above.   *See* Dkt. No. 68 at 29-30.

Whether the SAC has cured those deficiencies will be addressed below.[8] As for the remaining claims, though, one reason why the SAC must be dismissed, at least in part, is because Lynch did not have leave to add new claims or defendants. This fact would not change irrespective of whether Lynch had filed a response to the Motion to Dismiss. As a result, on this ground, all claims against MERS and the Trust are subject to dismissal without leave to amend. As for Defendants, the Court addresses each claim in the SAC in turn.

In the first cause of action, Lynch asserts a claim of "Lack of Standing/Wrongful Disclosure[.]" To the extent this claim is not premised upon fraud, it constitutes a claim for which Lynch was not provided leave to amend. Therefore, except as to fraud, which will be discussed below, the first claim is subject to dismissal without leave to amend.

In the second cause of action, Lynch asserts a claim of fraudulent concealment. Although it is difficult to determine the nature of the fraud with respect to this claim, it appears to involve fraud in the origination of the 2007 Mortgage. As the Court explained in the September 6, 2017 Order, though, any such claims related to the 2007 Mortgage are time-barred, and, as such, leave to

---

[8]The Court notes that two of the claims for which Lynch was allowed leave to amend–her UDAP claim and her claim of fraud related to a loan modification–are not re-alleged in the SAC. The SAC, therefore, does not cure any deficiencies with respect to those two claims.

amend was not granted with respect thereto. Therefore, the second claim is subject to dismissal without leave to amend (again).

In the third cause of action, Lynch asserts a claim of fraudulent inducement. The nature of the fraud is, again, difficult to discern, but, arguably, it may relate to the 2007 Mortgage and the 2010 foreclosure of the Property. With respect to the latter, because leave was provided to cure deficiencies in the fraud claim concerning the 2010 foreclosure, the Court will address the allegations in the SAC below. With respect to the former, however, as just discussed, leave was not provided, and thus, this part of the third claim is subject to dismissal without leave to amend.

In the fourth cause of action, Lynch asserts a claim of "unconscionable contract[.]" Once again, the nature of the allegations is difficult to discern, but the allegations again appear to concern fraud related to the 2007 Mortgage. In any event, because Lynch was not granted leave to add a claim of unconscionability of contract, the fourth claim is subject to dismissal without leave to amend.

In the fifth cause of action, Lynch asserts a breach-of-contract claim. Leave was not provided to add such a claim, and thus, it is subject to dismissal without leave to amend. The same is true for the sixth cause of action, in which

Lynch asserts a breach-of-fiduciary-duty claim.   Leave was not provided to add such a claim, and thus, it is subject to dismissal without leave to amend.

In the seventh cause of action, Lynch asserts a quiet title claim.   The September 6, 2017 Order was clear that Lynch's quiet title claim had been dismissed without leave to amend.   Therefore, Lynch did not have leave to assert (and ignored the September 6, 2017 Order in asserting) such a claim.   Once again, therefore, the seventh claim is subject to dismissal without leave to amend.

In the eight cause of action, Lynch asserts a slander-of-title claim.   Leave was not provided to add such a claim, and thus, it is subject to dismissal without leave to amend.   As for the ninth cause of action, it is for declaratory relief. Apart from the fact that Lynch was not provided leave to add a *claim* for declaratory relief, she cannot do so because declaratory relief is not an independent cause of action.   *See, e.g.*, *Layton v. Ocwen Loan Servicing, LLC*, 2015 WL 4512015, at *6 (C.D. Cal. July 23, 2015) ("as claims for declaratory relief are not independent causes of action, a plaintiff generally is not entitled to declaratory relief absent a valid underlying claim.").   In other words, to the extent Lynch seeks declaratory relief, it will rise and fall with her underlying claims. Therefore, the Court does not further address the ninth claim other than to dismiss it without leave to amend.

In summary, the only claims in the SAC for which Lynch may have been provided leave to amend are, arguably, the first claim and, in part, the third claim.

## II.    Res Judicata

Many, if not all, of the claims in the SAC are also subject to dismissal on the ground of res judicata.   Irrespective of whether Lynch had filed a response to the Motion to Dismiss or Defendants' supplemental brief, this too would not have changed, as the matters at issue in the State proceeding between these parties cannot change.

Res judicata "limit[s] a litigant to one opportunity to litigate aspects of the case to prevent inconsistent results and multiplicity of suits and to promote finality and judicial economy."   *Eastern Sav. Bank, FSB v. Esteban*, 296 P.3d 1062, 1066 (Haw. 2013).   The party asserting res judicata "has the burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim presented in the action in question is identical to the one decided in the original suit, or to a claim or defense that might have been properly litigated in the first action but was not litigated or decided."   *Id*. at 1068.

Defendants have easily satisfied this burden here.   First, a final judgment on the merits has been entered.   As the original and supplemental materials

submitted by Defendants show, on August 29, 2011, Fannie Mae filed a complaint

for ejectment against Lynch.   Dkt. No. 77-3.   In answering that pleading, among

other things, Lynch filed a counterclaim and third-party complaint against

Defendants.   Dkt. No. 132-2 at 8-22.   On January 21, 2015, the state circuit court

granted summary judgment in favor of Defendants as to the counterclaim and

third-party complaint.   Dkt. Nos. 132-1 at 6, 132-3 at 4.   On August 20, 2015,

the circuit court entered judgment and a writ of possession in favor of Fannie Mae

on its complaint for ejectment.   Dkt. No. 77-4.   Plaintiff did not appeal either of

those judgments.   Dkt. Nos. 132-1 at 6-8, 132-3 at 2-3.   Instead, Plaintiff moved

before the circuit court for relief pursuant to Rule 60(b), which was denied, and

then reconsideration of the motion for relief, which was also denied by the circuit

court.   Dkt. Nos. 132-1 at 7-8, 132-3 at 4-5.   Plaintiff appealed the denial of her

motion for relief and motion for reconsideration, Dkt. Nos. 77-5 at 1-2, 132-3 at 3,

and, on April 12, 2018, that appeal was rejected by the state intermediate court of

appeals, Dkt. No. 132-3.   The intermediate court of appeals entered judgment,

affirming the circuit court's denials of the motions for relief and reconsideration,

on May 15, 2018.   Dkt. No. 132-4.   No appeal or writ of certiorari has been

made to the Hawai'i Supreme Court.   *See* Dkt. No. 132-1 at 8.   The time to do so

expired on June 14, 2018, 30 days after entry of the intermediate court of appeals'

judgment. Haw. Rev. Stat. § 602-59(c). As a result, the Court finds that a final judgment on the merits was entered with respect to Fannie Mae's complaint for ejectment and Plaintiff's counterclaim and third-party complaint. *See Peelua v. Impac Funding Corp.*, 2015 WL 4042200, at *6 (Haw. Ct. App. July 2, 2015) (finding that there was a final judgment on the merits in an ejectment action following the Hawaiʻi Supreme Court's affirmance of a judgment for possession) (citing *Deutsche Bank Nat'l Trust Co. v. Peelua*, 265 P.3d 1128 (2011)); *cf. Esteban*, 296 P.3d at 1068 (stating that there was a final judgment on the merits when the time to appeal a foreclosure judgment expired).

Second, the parties in this litigation are identical to the parties in the above-mentioned State proceeding. As just discussed, in the State proceeding, Fannie Mae was a plaintiff and counterclaim defendant, Lynch was a defendant and counterclaim/third-party plaintiff, and BOA and Countrywide were third-party defendants.

Third, the claims presented in this action are identical to ones decided in the State proceeding or to claims that should have been litigated in the State proceeding. In its complaint for ejectment, Fannie Mae alleged that it was the owner of the Property, Lynch was occupying the Property without consent, and Fannie Mae had given Lynch notice to vacate. Dkt. No. 77-3 at 2. Fannie Mae

sought a judgment for possession giving it exclusive possession of the Property. *Id.* In her counterclaim and third-party complaint, Lynch alleged, among other things, that she was coerced into refinancing her mortgage in 2007, she was suffering from a medical condition at the time of the coerced refinancing, BOA made misrepresentations during negotiations for a loan modification, and a nonjudicial foreclosure was wrongfully conducted on the Property. Dkt. No. 132-2 at 10-14. Lynch asserted eight claims: (1) for breach of contract and the implied covenant of good faith and fair dealing; (2) for breaching an agreement to negotiate in good faith; (3) for a violation of RESPA; (4) for a violation of ECOA; (5) for unfair and deceptive practices; (6) for negligent and/or intentional misrepresentations; (7) for mental incapacity; and (8) for fraudulent inducement. *Id.* at 14-20.

If those claims appear familiar to the parties, it is because the exact same claims, in many respects with identical language, were also asserted in the original complaint in this action. *Compare* Dkt. No. 132-2 at 8-22, *with* Dkt. No. 1-1. In this light, essentially, after filing a counterclaim and third-party complaint while represented by counsel in State court, Lynch chose to initiate a new proceeding (this case) pro se using the exact same factual allegations, legal claims, and requests for relief. Why Lynch chose to do this is unknown, but now that the

original State action, involving the same Property, parties, allegations, and claims, has concluded with a final judgment on the merits, there is simply no reason why the principles of res judicata should not be applied with full force to the claims that have been raised in the SAC. While those claims may no longer be word-for-word repetitions of the claims asserted in the original State action, that is only because Plaintiff has been required by this Court to attempt to plead the claims sufficiently. The underlying claims, at least those against Defendants, are still the same: Defendants wrongfully and fraudulently foreclosed on the Property, Countrywide engaged in fraud with respect to the 2007 Mortgage, and Plaintiff should have title to the Property.[9]

In summary, the Court finds that res judicata applies to the claims asserted in the SAC against Defendants. While it certainly cannot be said that a true measure of judicial economy can be attained in this case, applying res judicata now will not only prevent any further mis-use of this Court's resources in presiding over claims

---

[9]Even if the claims in the SAC could somehow be construed as different than the ones in Lynch's counterclaim and third-party complaint, they are still ones that should have been litigated in the original State action. *See Esteban*, 296 P.3d at 1068-69 (concluding that a claim under the Truth in Lending Act could have been properly litigated as a counterclaim or affirmative defense in a foreclosure action because the claim arose out of the same transaction involved in the foreclosure action). All of the claims in the SAC arise out of transactions and facts–the 2007 Mortgage and the 2010 foreclosure–that were at issue in the original State action.

that have already been fully litigated in State court, it will also preserve the finality of the judgment as to those fully-litigated claims.

## III.  <u>Failure to State a Claim</u>

For the sake of completeness, the Court will also explain why Defendants were correct to argue, nearly 18 months ago, that Lynch has, again, failed to state any claim in the SAC.[10]

### 1.  <u>Claim One</u>

The first cause of action appears to contain two components.   Initially, it is alleged that Defendants do not have standing to foreclose on the Property.   The reason for this appears to be the following:

> because Defendants' actions in the processing, handling and attempted foreclosure…involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants, and each of them.

Dkt. No. 72 at ¶ 41.

---

[10]As with the other reasons discussed herein for dismissing the SAC, the SAC's failure to state a claim would also not have changed even if Lynch had filed a response to the Motion to Dismiss, as no response can change the allegations in the SAC.   *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original).

This part of the first claim, thus, appears to be premised upon some form of fraud. As the Court has repeatedly explained to Plaintiff, pursuant to Federal Rule of Civil Procedure 9(b), allegations of fraud must be stated with particularity, which includes alleging "the who, what, when, where, and how of the misconduct charged." *See* Dkt. Nos. 40 at 12, 68 at 13 (quotation omitted). Here, Plaintiff, once again, fails to state anything particular about the fraud that has allegedly rendered Defendants without power to foreclose on the Property.

In the next part of the first claim, it is alleged that MERS lacks authority to "foreclose a Deed of Trust" or to "transfer an interest in a Tangible Note." The allegations then continue to focus on an alleged "Deed of Trust" and "Tangible Note" and improprieties related thereto, including, the failure of the "Originator" to sell the note for full value, the failure to negotiate the note in the "ordinary course of business," and the lack of documents authorizing MERS to assign the deed of trust. It is further alleged that any attempt to transfer the deed of trust was void, Defendants supported the foreclosure of the Property with fraudulent documents, and MERS is not entitled to assert a claim in this case.

To the extent this part of the first claim is premised upon fraudulent documentation related to the foreclosure of the Property, Plaintiff, again, fails to state any particularity with respect thereto. To the extent this part of the claim is

premised upon something other than fraud, the allegations are largely conclusory statements unadorned by factual enhancement. In addition, in appearing to challenge transfers, assignments, or sales to which Plaintiff was not a party, she is asserting a claim for which she does not have standing. *See U.S. Bank Nat'l Ass'n v. Salvacion*, 338 P.3d 1185, 1190 (Haw. Ct. App. 2014) (summarizing cases and concluding that, "[t]ypically, borrowers do not have standing to challenge the validity of an assignment of its loans because they are not parties to the agreement and because noncompliance with a trust's governing document is irrelevant to the assignee's standing to foreclose."). Further, the mortgage loan between Plaintiff and MERS specifically provides that MERS may exercise any interest granted in the mortgage loan and one of the interests provided in the same is the right to sell the note without prior notice to Lynch. *See* Dkt. No. 77-1 at 4, 12.

As a result, any claim in this regard related to MERS is simply meritless, and any amendment would be futile. Moreover, because Lynch has been provided more than enough opportunities to adequately plead her claims of fraud with particularity, any further leave to amend is denied.

### 2. <u>Claim Two</u>

In the second cause of action, Lynch asserts a claim of fraudulent concealment. As mentioned earlier, although it is not easy to determine the

nature of the fraud with respect to this claim, it appears to involve fraud in the origination of the 2007 Mortgage.   This is because the allegations concern purported fraud with the loan between Countrywide and Lynch and the alleged failure of those two to reach a "meeting of the minds" as to the loan due to said fraud.   Putting aside, therefore, the fact that this Court has already found any such claims time-barred, which is mentioned above, the second claim still fails to allege fraud with any particularity.   Plaintiff alleges the purported concealing of lenders and terms in securitization agreements, yet she does not allege who these lenders were or how any terms were fraudulent.   Plaintiff alleges that "[f]inancial [i]ncentives" were paid, but not to whom.   Plaintiff alleges that "[a]cquisition [p]rovisions" existed in agreements, but does not identify the nature of the provisions or why they were fraudulent.   The remainder of the allegations are simply conclusory assertions, such as "Plaintiff's reasonable reliance upon the misrepresentations was detrimental[,]" unadorned with factual enhancement or are non-sensical.[11]   As a result, the second cause of action fails to state a claim, and no further leave to amend is appropriate.

_____

[11]For example, Plaintiff alleges:

> The purported lender claims to have accepted by negotiation the issuer Plaintiff's
> negotiable instrument as debtor in a deposit account; [Countrywide] furthered
> their deception by purporting to give consideration for an instrument Defendants'

3. **Claim Three**

In the third cause of action, Lynch asserts a claim of fraudulent inducement. Again, the nature of the fraud alleged in this claim is not easy to discern, but it may involve either or both the 2007 Mortgage and the 2010 foreclosure of the Property. To the extent the claim concerns the 2007 Mortgage, the Court will not further address it, as the deficiencies with any such claim of fraud are well documented in this Order and the prior orders of the Court. To extent the third claim concerns the 2010 foreclosure, though, this is, at least, a claim for which Lynch was granted leave to amend in the SAC. Nonetheless, the SAC does not come close to curing the deficiencies previously identified by the Court.

---

> purport to Plaintiff's issued Negotiable Instrument in the form of real money executing an underlying obligation (indebtedness) between the parties to the purported contract. [Countrywide] concealed in the presentation of the terms of the Mortgage contract a cross acceptance of which Plaintiff, the issuer of the negotiable instrument would accept ownership of the real property collateral evidenced by the Warranty Deed for executing an accommodation negotiable instrument and pledged security agreement on behalf of [Countrywide], the Accommodated party, for the purpose of a material variation to the purported contract in which Plaintiff would be acting as a *Guarantor* for [Countrywide], the Accommodated party, to use Plaintiff's accommodation parties' promise to put the accommodated into funds as surety and a personal property security interest in Plaintiff's pledged security instrument as collateral to secure their account debtor status for the purpose of a § 1031 – Exchange (table funded) transaction for a service release premium shortly after the closing of the purported loan.

Dkt. No. 72 at ¶ 55 (emphasis in original). Although the Court is more than aware of the facts and claims allegedly at issue in this case, the Court has absolutely no idea what it is Plaintiff is trying to allege in the foregoing paragraph.

The principal deficiency was Plaintiff's failure to plead fraud with particularity, pursuant to Rule 9(b).   This is still a noticeable deficit in the SAC. Plaintiff appears to essentially allege that Defendants were not entitled to foreclose on the Property.   This is because:

> Defendants misrepresented that they are the 'holder and owner' of the Tangible Note and the beneficiary of the Deed of Trust.   However, this was not true and was a misrepresentation of material fact. Documents state that the Originator allegedly sold the mortgage loan instrument to [the Trust].   Defendants are attempting to collect on an intangible debt obligation via the § 1031 – Exchange to which they have no legal, equitable, or pecuniary interest relating to [the Property].   This type of conduct is outrageous.   Defendants are fraudulently foreclosing on [the Property] which they have no monetary or pecuniary interest, and doing so with unclean hands.

Dkt. No. 72 at ¶ 66.

Once again, with respect to Plaintiff's allegations of fraud, the who, what, when, where, and how of the misconduct charged is missing.   At the very least, there is no allegation of *when* the alleged misrepresentations were made, no allegation of *who* made the misrepresentations, and no allegation of *where* the misrepresentations were made.   Moreover, with respect to the 2010 foreclosure, it is not even clear *to whom* the alleged misrepresentations were made.[12]

---

[12]While Plaintiff appears to allege that misrepresentations related to the 2007 Mortgage were made to her, no such allegation is made regarding misrepresentations concerning the 2010 foreclosure.   *See* Dkt. No. 72 at ¶¶ 65-71.

As a result, the third cause of action fails to state a claim. This is now the third opportunity Lynch has had to allege a minimally adequate claim of fraud related to the 2010 foreclosure. She has failed every time, despite the Court's guidance. No further attempt is justified.

### 4. **Claim Four**

In the fourth cause of action, Lynch asserts a claim of unconscionable contract related to the 2007 Mortgage. In reality, this is simply another claim attempting to allege fraud related to the 2007 Mortgage, and thus, is barred for all of the reasons already discussed with respect to such a claim. Nonetheless, for the sake of completeness, the Court initially notes that, in Hawaiʻi, unconscionability is recognized as a contract *defense*. *Narayan v. The Ritz-Carlton Dev. Co., Inc.*, 400 P.3d 544, 551 (Haw. 2017). It is entirely doubtful whether unconscionability can be raised as an affirmative *claim*. *See Casino v. Bank of Am.*, 2011 WL 1704100, at *14 (D. Haw. May 4, 2011). Even if such a claim was recognized in Hawaiʻi, Plaintiff has still failed to plausibly plead one. In the SAC, the alleged unconscionability appears to concern the following:

> [Countrywide] failed to clarify in the terms of the Mortgage loan contract that [Countrywide], the Originator on the contract, was in fact acting solely in the capacity as Accommodated Party account debtor beneficiary for a purported loan of money. [Countrywide] concealed they were financially benefi[t]ing by bargaining with a third party to

acquire a service release premium via wire funds transfer to table fund
the purported loan at the closing using a warehouse line of credit.

Dkt. No. 72 at ¶ 77.

Apart from being non-sensical, the foregoing, on its face, does not suggest
anything *unconscionable* about the 2007 Mortgage.  *See Narayan*, 400 P.3d at
551 ("Unconscionability has generally been recognized to include an absence of
meaningful choice on the part of one of the parties together with contract terms
which are unreasonably favorable to the other party.").   In the SAC, there is no
allegation that any contractual term is unreasonably favorable to Countrywide or
any other Defendant.   Rather, the allegations, to the extent they can be discerned,
relate to fraud in originating the 2007 Mortgage.

As a result, the fourth cause of action fails to state a claim and authorizing
the amendment of a legally baseless claim would serve no purpose.

### 5.     Claim Five

In the fifth cause of action, Lynch asserts a breach-of-contract claim.
According to the SAC, after Countrywide sold its interest in the Property,
Countrywide and/or MERS breached the terms of the 2007 Mortgage when they
failed to release Lynch from her payment obligations.   In other words, the SAC
appears to allege that a sale of an interest in the note, which evidences the

indetedness of the 2007 Mortgage, results in payment "in full" of said mortgage. *See* Dkt. No. 72 at ¶ 83. Such an allegation is entirely meritless. The 2007 Mortgage clearly provides that the note or an interest in the note can be sold, and such a sale may result in a change in the entity collecting payments due under the note. Dkt. No. 77-1 at ¶ 20. The 2007 Mortgage further provides that Plaintiff is entitled to a release of her contractual obligations when "payment of all sums" has been made. *Id*. at ¶ 23. These provisions, thus, do **not** mean that when the note, or an interest in the note, is sold, the payments due under the note are paid in full. Instead, it simply means that the entity to whom Plaintiff makes her mortgage payments may change. Put simply, a sale of the note does not magically end Lynch's contractual obligation to make payments on her mortgage. That only occurs when payment of all sums, i.e., the principal plus interest, has been made.

As a result, the fifth cause of action fails to state a claim and, because the claim is factually baseless and plainly non-sensical, it would be futile to permit amendment.

### 6. <u>Claim Six</u>

In the sixth cause of action, Lynch asserts a claim of breach of fiduciary duty. The alleged breach concerns the same breach discussed above concerning

the sale of the note and the purported release of Plaintiff from her payment obligations under the note.   As discussed, there was no breach of the 2007 Mortgage in this regard, and thus, there has been no breach of a fiduciary duty in failing to release Plaintiff from her payment obligations.

In addition, while the September 6, 2017 Order did not address a fiduciary duty claim–because one was not asserted in the FAC–the November 15, 2016 Order dismissing the original complaint in this case did.   In the November 15, 2016 Order, the Court dismissed *without* leave to amend two claims, one concerning a breach of the duties of good faith and fair dealing, and a second concerning another breach of the duty of good faith.   *See* Dkt. No. 40 at 22-26. As the Court explained at that time, "Hawaii federal district courts have uniformly held that a tort cause of action for bad faith does not exist in the context of a mortgage loan contract."   *Id*. at 23 (citations omitted).   Two and a half years later, that principle continues to hold true.

As a result, the sixth cause of action fails to state a claim, and no point would be served by allowing its amendment.

### 7.    Claim Seven

In the seventh cause of action, Lynch, again, asserts a quiet title claim. This claim has, as discussed, already been dismissed without leave to amend.   But

even if it had not, Plaintiff's allegations, again, fail to plead a quiet title claim.   In

each of the Court's prior orders, it has been explained to Lynch what it is that is

required to allege a claim to quiet title.   Dkt. Nos. 40 at 7, 68 at 20-21.   Yet

again, though, in the SAC, Lynch has ignored the Court's explanations.   Instead,

the pertinent allegations are simply filled with conclusory statements about

Defendants not having "any legal right" to the Property.   *See* Dkt. No. 72 at

¶¶ 92-98.

Plaintiff has, therefore, once again failed to allege a plausible quiet title

claim and, given the number of opportunities and guidance she has already been

provided, the Court can only reasonably conclude that she simply does not have

one.

### 8.   <u>Claim Eight</u>

In the final substantive cause of action, Lynch asserts a slander-of-title

claim.   Although the allegations are, again, confusing, it appears that Plaintiff

believes that documents memorializing an alleged assignment of the "Deed of

Trust" and the foreclosure of the Property constituted false statements to a third

party that slandered her title to the Property.   Putting aside the many erroneous

assumptions upon which this claim appears to be based and the fact that the claim

appears to be another re-packaging of Plaintiff's wrongful foreclosure and/or fraud

claims, on a basic level, the SAC fails to allege how the documents memorializing the assignment and the foreclosure were in any sense false.  *See Isobe v. Sakatani*, 279 P.3d 33, 42-43 (Haw. Ct. App. 2012) (explaining that, among other things, a claim for slander of title requires "falsity of the words published").

As a result, the eighth cause of action fails to state a claim, and there is no cause to permit amendment.

## IV.    <u>No Leave to Amend</u>

In summary, (1) all of the claims asserted against MERS and the Trust are dismissed because Lynch was not granted leave to add them as defendants in this case, (2) Claims Two, Four, Five, Six, Seven, Eight, and Nine are dismissed because Lynch was not granted leave to add or re-allege them in the SAC, (3) to the extent Claims One and Three are not based upon fraud, they are dismissed because Lynch was not granted leave to add or re-allege any such claim in the SAC, (4) to the extent Claim Three is based upon the 2007 Mortgage, it is dismissed because Lynch was not granted leave to re-allege any such claim in the SAC, (5) Claim Nine is dismissed because it is not an independent cause of action, (6) all of the claims asserted against Defendants are barred on the ground of res judicata, and (7) all of the claims asserted in the SAC are dismissed because each fails to state a claim.

As the foregoing suggests, there are numerous reasons for dismissing each and every one of the claims asserted in the SAC. This is true even if Lynch had filed a response to the Motion to Dismiss, as a response would not change the allegations in the SAC, the limited leave Plaintiff was granted to amend her claims in the Court's prior orders, and the result of the original State proceeding between these parties. Moreover, this case, from the date it was first initiated in State court, is more than three years old, and Plaintiff has filed three different complaints. In each amended complaint, Plaintiff has failed to follow the instructions of the Court and address the deficiencies with her claims. In addition, as explained, amendment would be futile. The Court, thus, finds no reason to provide Lynch with yet another opportunity to amend her claims.

## CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss Second Amended Complaint, Dkt. No. 76, is GRANTED, and the Second Amended Complaint is DISMISSED. The Motion to Strike, Dkt. No. 156, is DENIED.

The Clerk is instructed to enter Judgment, pursuant to this Order, the November 15, 2016 Order (Dkt. No. 40), and the September 6, 2017 Order (Dkt. No. 68), in favor of Defendants Federal National Mortgage Association,

Countrywide Home Loans, Inc., and Bank of America, N.A. The Clerk is then

instructed to close this case.

IT IS SO ORDERED.

DATED: April 29, 2019 at Honolulu, Hawaiʻi.



_____
Derrick K. Watson
United States District Judge

---

*Donna Lynch v. Federal National Mortgage Association, et al.;*
Civil No. 16-00213 DKW-RT; **ORDER (1) GRANTING DEFENDANTS'
MOTION TO DISMISS, (2) DENYING DEFENDANTS' MOTION TO
STRIKE; AND (3) DISMISSING THE SECOND AMENDED COMPLAINT
WITHOUT LEAVE TO AMEND**